**People of the State of Illinois, Plaintiff-Appellee,
v. Robert Wilson, Defendant-Appellant.**

Gen. No. 50,617.

First District, First Division.

June 12, 1967.

Rehearing denied July 11, 1967.

Arthur J. O'Donnell, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen V. Speranza, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Robert Wilson and his wife Barbara were jointly indicted for knowingly obtaining by deception, control over certain property of Spiegel, Inc., in violation of chapter 38, section 16–1(b). They were both found guilty by a jury. Robert Wilson was sentenced to a term of not less than four, nor more than seven years. This appeal concerns only Robert Wilson.

Defendant and his wife own a building located at 14846 So. Lincoln Avenue in Harvey, Illinois. They reside in another building around the corner. On March 28, 1964, a phone order was received from a man who identified himself as Willie Wilson. He ordered several items and directed that they be delivered to a Mrs. Mary Ford at 14846 So. Lincoln Avenue, Harvey, Illinois. An investigator from Spiegel's went to the address and inquired from neighbors in adjacent buildings if a Mary Ford lived at the stated address. The information he received was that no such person lived there.

The following day the investigator returned and saw a car parked near the building. He went to the Harvey Police, where it was determined from the license plate number that the car belonged to Robert Wilson. The Spiegel Warehouse was contacted. Four packages, containing all but one of the items listed in the telephone order, were brought to the Harvey Police Station and marked for identification by a police officer. A Spiegel truck driver was also dispatched to the Police Station.

The driver was given the four packages and a Spiegel order blank which was to be signed upon delivery of the merchandise. Two Harvey Police Officers in an unmarked car, two investigators from Spiegel in their own car and the delivery truck then proceeded to the building at 14846 Lincoln Avenue. If the driver succeeded in delivering the packages, he was to drive away leaving the tail gate on the truck down.

It is undisputed that the driver went to the stated address, talked to defendant Robert Wilson, and left without leaving the packages. Wilson drove to his residence around the corner and returned with his wife. The truck driver also returned to the premises, left the packages and drove away. The police closed in immediately and placed the Wilsons under arrest.

Testimony of the content of the conversations between the truck driver and Robert and Barbara Wilson is in conflict. Testimony of the actions of the defendants at the time of their arrest is also conflicting. The truck driver testified that on his first arrival at the premises, he saw Robert Wilson and asked if Mary Ford lived on the premises. Defendant pointed to the second floor. The driver went back to the truck, pulled up alongside the house, went to the second floor and knocked on the door. Wilson opened the door. The driver asked: "Mary Ford live here?" Defendant answered, "Yes." The driver asked Wilson to get her to sign for the package. Wilson called "Mary" three times and when there was no answer said: "She must be awfully tired. She just had a baby, she might be hemorrhaging." Wilson asked if he could sign as he was Mary Ford's husband. The driver said he had to call his dispatcher to see if this was all right, and would return. The driver then left.

Defendant's version of his encounter is entirely different. He testified that the driver asked him where he could find Mary Ford. Defendant answered, "I am sorry sir. I don't know." The driver showed him the delivery slip and Wilson said the address was correct, but no one lives here by that name. Wilson then remembered his wife had rented the upstairs apartment but did not know their name. The two men went upstairs but received no response when they knocked on the door and hollered: "Anyone home?" The driver then said: "(I)f you want to accept these packages I have for her I will leave them with you." Wilson responded that he would go and ask his wife the name of the new tenants and the driver said he would check with the dispatcher if it was all right to leave the packages. They then left the building together.

Defendant was observed by the police officers going to his residence two blocks away and returning to the

Lincoln Avenue building. The driver drove to where the Spiegel investigators were and they told him it was okay to have defendant sign for the packages. He then returned to the building. The driver testified he went up to the second floor apartment, Barbara Wilson was standing at the door and, upon being asked if she was Mary Ford, answered "yes." She signed the order blank "Mary Ford." The driver brought the four packages upstairs and left, leaving his tail gate down.

Barbara Wilson's testimony is quite different. Upon being informed by her husband that a truck driver had some packages for a Mary Ford, she informed her husband that the new tenants were named Scott. She returned with Robert to the building. The driver approached her in the hall and said: "(T)ell that fellow my boss says okay to leave the packages. Where do you want them?" Barbara Wilson told him to leave the packages in the hall. The driver wanted her husband to sign but he had gone to the washroom. The driver, indicating the signature line, told her to sign "Mary Ford" and left the building.

The officers saw the driver pull away. They also saw Robert and Barbara Wilson running from the house. Barbara was arrested in the backyard. Robert went into the garage and was found there under a car wearing a white shirt. The Wilsons said they walked out of the house. Robert went to the garage to check a tire on his father's car. The officers then went into the enclosed back porch of the building and recovered the four packages that had previously been marked for identification.

■ The first point raised by defendant is that his arrest is unlawful, and the four packages seized at that time should have been suppressed. It is admitted that there was no warrant for Robert Wilson's arrest. However, the facts clearly indicate that the officers had

probable cause to believe an offense had been committed by this defendant and his arrest was proper. People v. Brinn, 32 Ill2d 232, 204 NE2d 724 (1966).

██ At the hearing on the motion to suppress the evidence, the officers testified that the four packages involved were taken from a common hallway in the building. Thus no unlawful search was involved. United States v. Polk, 201 F Supp 555 (ND Cal SD 1961), affirmed 314 F2d 837 (9th Cir 1963). Even accepting defendant's argument that there was a search of defendant's private property, such search was incident to a lawful arrest. People v. McCrimmon, 37 Ill2d 40, 224 NE 2d 822 (1967).

The second point raised by defendant is that the State failed to prove that the value of the goods stolen was in excess of $150. The jury returned a general verdict with no specific finding as to value.

██ Two investigators for Spiegel testified concerning the value of the merchandise. The first investigator testified that the approximate value of the merchandise ordered was $300. The second investigator admitted that he had no independent recollection of the value but refreshed his recollection by looking at the order blank. People's Exhibit No. 1, admitted in evidence. He then stated that the value was $290.84. Defendant refused to stipulate that the value of the goods exceeded $150. The investigator then opened each of the packages and showed the jury a phonograph, a movie camera set, a paint sprayer and motor. The investigator again stated the value was $290.84. Neither investigator was cross-examined on the question of value of the merchandise. We hold that the above described testimony was sufficient to show the value of the merchandise.

██ Defendant cites People v. Kurtz, 69 Ill App2d 282, 216 NE2d 524 (1966), for the proposition that the price at which an item is sold is not proof of value.

However, in Kurtz the evidence was of a sale price eight months after the item was stolen. In the instant case, the invoice accompanied the merchandise and was the price defendant "agreed to pay." The testimony of the investigators, and the established selling price as shown on the invoice distinguish the instant from the Kurtz case.

Defendant also argues that the jury's general verdict is insufficient because it made no finding as to value and secondly because the indictment although properly setting forth the crime contained a typographical error of the section of the Criminal Code. Defendant admits that he was aware of the charges against him and the typographical error did not prejudice him in any manner. The only question is the propriety of the general verdict. Defendant relies mainly on the case of People v. Swinson, 406 Ill 233, 92 NE2d 758 (1950). In Swinson the court stated: (P 237.)

> "The value of the property taken is a material fact necessary to establish the type of larceny charged; that value must be specifically found by the jury and be incorporated in its verdict."

Although defendant refused to stipulate that the value of the merchandise was in excess of $150, he did not cross-examine either witness who testified on value, and his only objection was based on the fact that the Spiegel invoice (People Exhibit No. 1) was not an original. (Exhibit No. 1 was the driver's copy, signed "Mary Ford.") We therefore hold that there was no real issue as to value or conflict on the evidence of value and a general verdict was proper. People v. Tomaszek, 54 Ill App2d 254, 204 NE2d 30 (1964).

The final issue raised by defendant is that he was not proven guilty beyond a reasonable doubt. He argues that the evidence does not show that defendant

"intended to deprive" Spiegel of the merchandise involved. In a case of this nature proof of the elements of the crime is for the jury to determine. People v. Rogers, 16 Ill2d 175, 157 NE2d 28 (1959). The evidence here showed that defendant initially represented himself to be Mary Ford's husband. When the Spiegel truck driver would not leave the merchandise, defendant brought his wife back to the Lincoln Avenue building. After the merchandise was left, he ran to the garage behind the building and attempted to hide under a car. This evidence is not so unsatisfactory as to raise reasonable doubt of defendant's guilt. People v. Drumwright, 48 Ill App2d 392, 396, 199 NE2d 282 (1964).

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.