THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD K. SPEAR, Defendant-Appellant.

(No. 12289; ▓▓▓▓▓▓▓▓

Fourth District—December 30, 1974.

David V. Munnis, of Champaign, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana, and Frances Hulin, for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant was convicted of unlawful manufacture of cannabis following a jury trial and sentenced to 2 to 6 years in the penitentiary. This

was the second trial, the previous one having ended in a mistrial. He argues on appeal that he was twice placed in jeopardy by the fact of being tried again, that he was not proved guilty beyond a reasonable doubt, proscribed cross-examination of one of the State's witnesses, admission into evidence of incompetent evidence, and error in sentencing. With regard to the latter he asserts that the jury made no finding as to the quantity of cannabis involved; thus, he should have received the lowest sentence of many prescribed for cannabis violations.

■■ The mistrial at the first trial was on his motion. This looks like self-invited error and, if so, it generally is of no avail. To get around this impediment, he argues that he was forced to do so because the reasons for aborting the trial were caused by the State in "an attempt to take unfair and improper advantage of the defendant." What this advantage might be we are not told. Clearly, the State did not comply fully with the order of discovery in advising defendant of an oral statement of his—which, when testified to, was highly prejudicial—"knowledge of or involvement in a crime, a burglary, not before the court." The court termed this testimony "highly prejudicial" and the mistrial followed on defendant's motion. Apparently, too, at the first trial the chain of possession witnesses for identification of the marijuana was something less than complete. The necessity of additional witnesses was disclosed and the State moved to add two more to its list. Though defendant does not tell us so exactly, the juxtaposition in his brief of this circumstance together with the testimony of the oral statement of defendant, we take it that we are supposed to infer that the highly prejudicial statement was elicited for purposes of terminating the trial by forcing the defendant to ask for a mistrial. When the court inquired as to the reason for offering this testimony, the State's reply was that it was a foundation "for something that didn't materialize." As we have noted, defendant says that this "something" was the attempt to take unfair advantage of him.

This reasoning seems to us to be somewhat convoluted. It is only surmise, at best, that the State interjected something highly prejudicial knowing that it would trigger a mistrial because defendant simply had to ask for it—i.e., he had no other choice. It is just as reasonable to surmise the contrary. Defendant's motion for a mistrial related to the failure to disclose his oral statement prior to trial—and this was the basis for the court's allowance. That the statement was "highly prejudicial," that defendant's counsel was somewhat surprised, and had not an opportunity to defend against it, were the reasons for the ruling. True, it was "caused" by the State—but "caused" in the sense only that it forgot to do something. We cannot discern that this "something" was an

attempt to obtain an unfair advantage. The cases cited by defendant are not, in our opinion, apposite.

The point as to conviction beyond a reasonable doubt requires a short recital of the evidence. Defendant was arrested after fleeing from a home—not his—which had been raided by the police—city, State and sheriff. In the raid, 15 separate items of marijuana were seized from the attic, living room, kitchen and basement. They ranged from burned cigarette paper to 32 kg. of raw marijuana found in the basement. Also seized were some hypodermic needles and LSD. Such material was sent to a laboratory in Chicago for testing—which raises the point of chain of possession, which we will examine shortly. An accomplice, who had pleaded guilty to various charges arising from the search, testified that on August 3 or 5, 1972, he saw defendant and others bring a quantity of marijuana to this particular residence and that it remained there and was seized by the officers on August 16. Apparently, the raw marijuana was processed in the kitchen by drying it in the oven and he testified that Spear was present when such processing took place. Another accomplice—a minor—testified that he and the defendant picked 5 of 10 pounds of marijuana on the day before the raid, placing them in plastic bags and returning them to the residence in question. These were also seized. Defendant was sitting in the living room when the police arrived and the dryer was on in the basement where some of the raw marijuana was located. The first accomplice, who had pleaded guilty to unlawful possession of marijuana, was granted immunity in return for voluntarily giving a statement which incriminated defendant, and the disposition on his plea had not been determined at the time of trial.

■■ If one believes the accomplices, it is hard to see how the argument that there was insufficient proof for conviction can prevail, for, from our short recitation, the facts were certainly there on which a conviction can be sustained. To the argument that their testimony was incredible, we have to say, as always, that such was for the jury and not for the court, much less a reviewing court. No question of law is here presented where we can say that the proof was absent on which to ground this conviction.

■■ Defendant next argues that his cross-examination of one of the accomplices was so limited by the court that an abuse of discretion is present. This is hard to see under the circumstances. As a general rule, the latitude to be allowed in cross-examination rests largely in the discretion of the trial court, and it is only in cases of clear abuse that a reviewing court will interfere at all. (*People v. Halteman*, 10 Ill.2d 74, 139 N.E.2d 286; *People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693.) The accomplice testified as to events between August 3-5 and August 16, the

day of the raid. When attempts were made to go outside of this period, objections thereto were sustained. Defendant argues that such preclusion prevented him from establishing possible facts that might have further shown "bias" on the part of one of the accomplices and render his testimony unbelievable. But we are not pointed out exactly in what particular the cross-examination was limited and as to the specific details of what questions and what areas of inquiry were prejudicial to him that the court prevented him from pursuing. All we can say is that there was clearly no abuse of discretion in keeping the interrogation within the time frame testified to on direct.

■■ We next come to the chain of possession argument. Eighteen exhibits were admitted into evidence, as to which defendant says there was no continuous chain of custody. These exhibits have to do with the marijuana seized during the raid. In essence, a great many different officers gathered the evidence and subsequently gave it to other officers to transport to the chemist in Chicago and then back again to the chief of police. Conflicts developed in the testimony as to who received it in Chicago, as to what was actually seized and what was identified, exactly when all the exhibits were turned over to the chief and as to what was delivered by the chief to the officers transporting the exhibits for analysis. The chemist had no recollection as to Exhibits 5 through 18 in their "field condition," but he did at the trial recognize Exhibits 2 through 18. Significantly, various officer-witnesses did identify the material that was taken from the house. And though we might observe that things could have been done differently and better so far as the chain of possession was concerned, the identification at the trial was pretty complete. When we couple this identification with the chain of possession evidence, and put it in context with a complete lack of evidence as to any tampering or substitution, we can only say that these exhibits were properly admitted into evidence. As was said in *People v. Hines*, 131 Ill.App.2d 638, 645, 267 N.E.2d 696: "The chain of possession was complete and the fact that certain other people had access to the exhibits at various stages of the possession would not affect the admissibility of the exhibit *unless there was actual evidence of tampering or substitution*" (emphasis added), and in *People v. Belousek*, 110 Ill.App.2d 442, 448, 249 N.E.2d 693:

> "Nothing in the record suggests tampering, alteration or substitution, either intentional or accidental, with the separately wrapped items during this period. [Citation.] Under these circumstances the failure to show who carried the items from the receiving desk of the crime laboratory to Forslev's laboratory is not a fatal defect in the chain of possession."

The final point urged has to do with the propriety of the sentence— 2 to 6 years. The verdict returned did not specify any particular weight as to the cannabis involved and the argument is therefore made that only the lesser of the sentences available—180 days—could be imposed under section 5 of the Cannabis Control Act (Ill. Rev. Stat. 1971, ch. 56½, par. 705). Under this paragraph anyone who manufactures 2.5 grams or less is only subject to 180 days. Defendant argues from *People v. Swinson*, 406 Ill. 233, 92 N.E.2d 758, that in larceny, where the indictment fails to charge the value of the amount stolen and there is no finding by the jury of value, the only sentence that can be imposed is that fixed for the lesser of two valuations.

■■ Here, with regard to the facts, the total weight was far in excess of 500 grams—in the neighborhood of 42 kg. There was no issue made as to weight or quantity, and, of course, we are dealing with weight and not value as in theft. Where no issue exists as to quantity, we think that no finding thereof is necessary by the jury and that a general verdict, as in this case, will support the penalty imposed. Because there was no contest, there is no factual issue for the jury to decide—thus, no need for a finding. With regard to theft, we might point out that in *People v. Wilson*, 84 Ill.App.2d 269, 228 N.E.2d 131, and *People v. Piehl*, 6 Ill.App. 3d 296, 285 N.E.2d 612, general verdicts were returned with no specific finding as to value and felony convictions upheld because value greater than $150 was not in issue. If defendant thought an issue was presented, he should have submitted an instruction as to weight. His failure implies a lack of issue in this regard.

The conviction appealed from is affirmed.

Affirmed.

TRAPP, P. J., and KASSERMAN, J., concur.