THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY MARTIN WITANOWSKI, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ONE 1976 DODGE COLT 2-DOOR VIN. NO. 6M21K69109930 GREGORY MARTIN WITANOWSKI, Defendant-Appellant.

Third District    Nos. 81-434, 81-418 cons.

Opinion filed March 11, 1982.

Ronald E. Boyer, of Fleming, Boyer & Strough, of Watseka, for appellant.

Tony L. Brasel, State's Attorney, of Watseka (Gale C. Coil, Assistant State's Attorney, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The defendant, Gregory Witanowski, appeals from his convictions for aggravated battery and unlawful possession of cannabis. He also appeals from the judgment of forfeiture on his automobile, based upon his conviction of the unlawful possession of cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)). Guilty verdicts on three counts of aggravated battery were returned by the jury, and the court entered a guilty verdict on the unlawful possession charge, the defendant having waived the jury on that charge. The defendant was then sentenced to two years' probation, fined $1,825, and ordered to make restitution to the police officers for their medical expenses, being $259.45. The defendant's automobile, found to have been knowingly used in the commission of the unlawful possession offense, was ordered forfeited. Three issues are raised on this appeal: (1) whether the court committed reversible error in giving Illinois Pattern Instructions, Criminal, No. 24.20 (1968) (hereinafter cited as IPI) over defendant's objection; (2) whether the trial court erred in denying the motion to suppress the cannabis; and (3) whether the State sufficiently proved chain of custody so as to allow the cannabis into evidence. We affirm.

In pertinent part, the record reveals that on December 30, 1979, the defendant was traveling on Interstate 57 in Iroquois County. State Trooper Buhrmester began following the defendant's auto, for the purpose of determining its speed. The trooper, who was in an unmarked auto, gauged the defendant's speed at 65 miles per hour. Both autos then passed another unmarked police vehicle. In that second police auto was

Trooper Muensterman, who with his radar gun clocked the defendant's speed at 65 miles per hour. The police vehicles in pursuit then activated their red lights and attempted to stop the defendant's auto, for the purpose of arresting him for speeding. He did not respond or slow down. Buhrmester then pulled his auto alongside the defendant's and motioned for the defendant to stop. He did not. The trooper then again positioned his auto alongside the defendant's and pointed his service revolver at the defendant. The trooper was in uniform. The defendant thereupon accelerated to a speed of approximately 95 miles per hour and a chase ensued. Two police vehicles attempted to stop the defendant in his auto but were unsuccessful. On two occasions they managed to stop the vehicle, whereupon they exited their autos and began to approach the defendant's auto. Each time the defendant then maneuvered his auto around their stopped vehicles and pulled back onto the interstate at a high rate of speed. The chase continued after those unsuccessful attempts to stop the defendant and arrest him. It lasted for a number of miles along the interstate before the State troopers, through the use of a rolling roadblock, were able to finally stop the defendant's auto. The auto was stopped in a driving lane of southbound I-57. The police approached, in uniform, but the defendant refused to exit his locked auto. He unlocked the door only after the troopers approached with a crowbar for the purpose of prying open the door. The officers were attempting to remove the defendant from his auto when a struggle ensued. During the struggle both officers received bite wounds from the defendant, which later required emergency treatment. The defendant managed to break loose from the officers, and he ran across the median to approach a stopped auto. With the arrival of another squad car, the defendant permitted himself to be handcuffed. He was then placed in a police vehicle. Other officers had by that time arrived on the scene, and considerable bystanders had stopped to observe.

During the struggle, Officer Buhrmester was obliged to get into the auto of defendant to take it out of gear, for the auto was rolling backwards and was still in gear. The engine continued to run, and the auto remained in the lane of the interstate highway.

Buhrmester later returned to defendant's auto, after the defendant had been subdued, for the purpose of looking for any weapons or dangerous items and for the purpose of discovering evidence which might explain the defendant's bizarre and erratic behavior. He saw in plain view on the back floor a brown paper bag, open at the top, containing a clear plastic bag which contained a green, leafy material. Another officer, Trooper Luman, who had arrived at the scene, also observed from the outside of the vehicle a hand-rolled cigarette, partly burned, and a leafy material with seeds, in plain view within the auto.

Buhrmester pointed out the brown bag to Luman who, after conferring with his supervisor, confiscated the hand-rolled cigarette and the brown bag from the defendant's auto. It was later established that the brown bag contained cannabis. The seizure of the brown bag and the partly burned, hand-rolled cigarette was without a warrant and without the defendant's consent. On the basis of the evidence, the court denied the defense motion to suppress the cannabis. In so finding, the court stressed that the defendant's behavior prior to arrest was bizarre and erratic and that the officers were justified in entering the vehicle for the purpose of removing it from the driving lane of a busy interstate highway. The court further relied upon various exceptions to the warrant requirement, including the plain-view doctrine, to sustain its denial of the suppression motion.

At the trial, evidence of a similar nature was admitted concerning the circumstances of the arrest. Numerous other officers also testified concerning the chain of custody of the cannabis, after its seizure. We need not detail that testimony at this time.

We also note that the defendant testified at trial. His version and explanation of the circumstances of the events on that day was that he did not know, initially, that his pursuers were police officers. He stated he was fearful when one of the officers brandished a gun and that he accelerated to get away from them. Though admitting to having seen their uniforms, the defendant testified he refused the officer's demands to exit his car until they provided proper identification. He also testified that the officers pulled him from his auto and began kicking him. He testified that he bit the officers in defense of his person, in response to the beating they administered. We would note that both the court, in its suppression denial order and opinion, and the jury, by its verdicts, adopted the officers' version of what transpired on the highway that day. Those findings are supported amply by the evidence in the record and we take them as true for the purposes of this appeal.

Following presentation of the evidence, a jury instructions conference was held. The defense objected to People's Instruction No. 10, which read:

> "A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

This is pattern instruction No. 24.20, from IPI Criminal Instructions. It was given over defense objection. A defense attempt to modify 24.20 so as to inform the jury that a person is justified in using force to the extent necessary to defend himself against excessive force by a police officer was rejected by the trial court. However, the aggravated battery instruction (IPI Criminal No. 11.09) was modified at defense request to include an element that the jury must find that the defendant did not reasonably

believe the force he used was necessary to protect himself from unreasonable force in order to convict. The instruction, as modified, was given.

The jury returned guilty verdicts on three counts of aggravated battery and the court, hearing the unlawful-possession-of-cannabis charge without a jury, returned a guilty verdict on that charge. Thereafter, the auto used in the possession-of-cannabis case was ordered forfeited.

■■ The first issue raised by the defendant is whether the court committed reversible error in instructing the jury with IPI Criminal No. 24.20, set forth above. The defense argues that the evidence in the case did not support giving the instruction and that the instruction was highly prejudicial to the defendant. The defendant correctly notes that a private person does have a right to defend himself against a police officer who uses excessive force (*People v. Athey* (1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332). He then argues that the evidence in the case raised an issue of excessive force and that he was prejudiced in such defense by the use of IPI Criminal No. 24.20. We disagree. Of course, in addressing issues raised with respect to specific instructions, the reviewing courts are obliged to examine the instructions as a whole, to determine whether the jury was adequately and properly instructed. In the instant case, the evidence presented warranted the use of IPI Criminal No. 24.20, for there was evidence that the defendant resisted arrest at a time when he knew the arrest was being made by a peace officer. The defendant was charged with aggravated battery, as a result of his resistance to the arresting officers. Under similar facts and circumstances, the use of this instruction was upheld by the court in *People v. Paez* (1977), 45 Ill. App. 3d 349, 359 N.E.2d 1083. There, as here, the defendant's resistance came while the officers were attempting to make an arrest, and there, as here, the defendant claimed that the arresting officers overreacted so as to justify the defendant in defending himself. The court, in concluding no prejudicial error was committed by the use of the instruction, stated:

"A necessary element of the crime of aggravated assault against a police officer who is in the course of effecting an arrest is that the defendant act without legal justification. [Citation.] In a trial which involves the offense of aggravated battery against a peace officer attempting to effect an arrest it is not prejudicial error to instruct on the lack of legal justification for using force to resist the arrest when the instruction is relevant based on the facts adduced at the trial. [Citation.]" (45 Ill. App. 3d 349, 351. See also *People v. Taylor* (1977), 53 Ill. App. 3d 810, 818-19, 368 N.E.2d 950.)

We find that the facts in the instant case warranted the use of instruction No. 24.20, and that there was no reversible error in its use. The defense reliance upon *People v. McCauley* (1972), 2 Ill. App. 3d 734, 277 N.E.2d 541, in which error was found in the giving of this instruction, is

misplaced. In *McCauley*, as the court noted in *Paez* when distinguishing it, there was no evidence of resisting arrest so as to justify the giving of the instruction. 45 Ill. App. 3d 349, 351.

Nor do we think that the instruction deprived the defendant of his excessive force defense. The jury was apprised of the substance of that defense and the law thereon by way of the modification of the aggravated battery instruction. The issues instructions, as modified by the defense, informed the jury that in order to find the defendant guilty, it must find that the defendant did not reasonably believe the force he used was necessary to protect him from unreasonable force. The instruction was given to the jury, and the defense argued the defense to the jury. The jurors, on the instructions as a whole, were informed that the defendant was not to be found guilty if they found that he reasonably believed his conduct was necessary to protect himself from the officers' unreasonable force, but that if the defendant's actions stemmed from an intent to resist arrest, the defendant could be found guilty. The defendant was not deprived of his defense. While we may have chosen a different manner of instructing the jury on these issues, those given by the trial court, viewed as a whole, adequately and properly stated the law to be applied, and we find no reversible error in the giving of IPI Criminal No. 24.20.

■■■ The next issue raised by the defendant is whether the court erred in denying his motion to suppress the cannabis confiscated from the automobile after his arrest on the highway. The defense contends that the warrantless search of his auto and the seizure of the bag of cannabis were violative of his fourth amendment rights. It is axiomatic in this tangled area of the law that each case must be decided upon its own facts and circumstances, and the present case amply demonstrates the wisdom of the rule. (*People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739.) The question in determining the validity of a search is reasonableness, based upon circumstances facing the officers at the time. (*People v. McKnight* (1968), 39 Ill. 2d 577, 237 N.E.2d 488; *People v. Ledwa* (1980), 81 Ill. App. 3d 276, 401 N.E.2d 298.) The facts and circumstances in the case at bar show exigencies facing the officers immediately after the arrest of the defendant which render the subsequent warrantless search reasonable. The defendant had exhibited bizarre and unusually dangerous behavior prior to his arrest. He had led the officers on a high speed automobile chase over a number of miles of Interstate 57. On two occasions, after having been forced to stop by the officers, he had then evaded arrest by re-entering the highway after maneuvering around the police blockage. His resistance to arrest continued when he was finally stopped a third time, for he refused to exit his auto. Once the door was opened, upon threat of forcible entry, the defendant proceeded to struggle with the officers attempting to handcuff him and put him under arrest. Then he

ran across the median of the highway and attempted to communicate with the occupants of autos stopped there. He was finally arrested and put in a squad car. His auto, however, remained running and stood in one of the southbound lanes of Interstate 57. Bystanders had stopped to observe the goings on, and traffic was moderate to heavy. Under all of the circumstances known to them at the time, the officers were justified in entering the defendant's auto, for the purpose of removing it from the highway and for the purpose of looking for a weapon, other dangerous items, or evidence to explain the defendant's actions. The defendant had exhibited behavior indicating something more serious than a mere speeding violation. His repeated attempts to flee and his resisting arrest could reasonably have raised a legitimate suspicion in the officers' minds that more was involved than a traffic violation. The defendant had vigorously attempted to escape arrest and then had refused to leave his auto. Added to these facts is his action in running to persons who had stopped their autos across the highway median, for the purpose of communicating with them. On these facts and circumstances, the officers were justified in believing that the defendant had something to hide, whether it be contraband, a weapon or other item, and that it was contained in the auto. Furthermore, with his actions in running to other persons, the police may well have feared that he had friends or accomplices nearby. Given the circumstances, such beliefs would have been reasonable and justified. Also to be noted, in considering the exigencies presented to the officers, is the fact that the car was still in a lane of interstate traffic and there were a number of bystanders nearby. We find that the warrantless search was reasonable in an attempt to secure an explanation for the defendant's behavior, in an attempt to preserve evidence, and in an attempt to locate weapons and thereby protect the public. Even assuming, *arguendo*, these grounds not to apply, the search and seizure was reasonable, because the evidence seized was in plain view on the floor behind the seat. (*People v. Epperley* (1975), 33 Ill. App. 3d 886, 888, 338 N.E.2d 581.) The officer was justified in entering the car to remove it from the highway and therein he could observe a bag, open at the top, containing a green leafy substance. Also observed, by another officer, from the outside of the auto, was a handrolled cigarette and a number of seeds. Given the testimony of the officer's experience with cannabis and the evidence of the defendant's bizarre highway antics, the officers were justified in believing that the green leafy substance in the bag was cannabis. The contraband was in plain view and thereby subject to seizure. We note, in this regard, that we are not confronted with a closed container in this case.

For the reasons above stated, we find that the warrantless search of the defendant's auto on the highway and seizure of the bag of cannabis

were reasonable and that the court did not err in denying the defense motion to suppress the evidence obtained from that search.

■■ The final issue is whether the State adequately proved the chain of custody over the cannabis, so as to support its introduction into evidence as an exhibit against the defendant. We find that the State met its burden of showing a chain of custody. There is no dispute that the State has a burden of showing a continuous chain of possession over the contraband in order to establish the proper foundation for admitting it into evidence. (*People v. Cain* (1966), 35 Ill. 2d 184, 188, 220 N.E.2d 195.) In the instant case, the State presented all those persons who had possession or control over the contraband, from the officer conducting the search on the highway, to his superior, to the evidence officer at the station, to the delivery officer, and finally to the lab man. All of these witnesses testified that the exhibit produced at the trial was the same as that which they had under their control or in their possession. Several noted their identifying marks on the exhibit. There was no evidence of alteration, tampering or other improper activity with respect to the evidence. While there is some discrepancy in the testimony as to the date the evidence went into the evidence locker, and while there was a brief time others could have had access, the defense presented nothing to affirmatively indicate any tampering, alteration or substitution. It has been held that in showing a sufficient chain of custody the State is not required to exclude all possibility of tampering. It is sufficient, absent a tangible suggestion of tampering or substitution, to prove a reasonable probability that the evidence has not been changed in any important respect. (*People v. Rhoades* (1979), 74 Ill. App. 3d 247, 252, 392 N.E.2d 923.) As already noted, a number of officers testified that the evidence was the same as when they had possession and control over it. Also, as noted, no evidence of tampering or substitution was presented or suggested. Under circumstances presented, then, we find the State met its burden of showing a chain of custody. There was no error in admitting the evidence at trial. *People v. Rhoades; People v. Spear* (1975), 24 Ill. App. 3d 818, 321 N.E.2d 705; *People v. Hines* (1971), 131 Ill. App. 2d 638, 267 N.E.2d 696.

In summary, we find that there was no reversible error in the instructions and that the evidence, specifically the cannabis, was properly admitted at trial. Accordingly, the defendant's convictions are affirmed, as is the forfeiture of his auto.

Affirmed.

HEIPLE, J., concurs.

JUSTICE STOUDER, concurring in part and dissenting in part:

I agree with my colleagues in that portion of the opinion relating to the conviction of the defendant for the possession of marijuana, and I join with them in affirming such conviction. However, I believe the trial court erred in giving the instruction objected to by the defendant which ruling is approved by the majority, and consequently I believe the defendant is entitled to a new trial on the battery charges, and consistent with such remandment I would vacate all sentences and remand for further consideration depending on the outcome of the new trial.

For my purposes the facts are adequately stated in the majority opinion. The gist of the charges was the defendant committed batteries on peace officers knowing them to be peace officers in the execution of their duties. His defense in substance was that of self-defense, the use of force in opposing the unreasonable use of force by peace officers. The testimony of the peace officers and that of the defendant were in substantial agreement on many aspects of the occurrence and in substantial disagreement on others. It was this dispute which the jury was required to resolve, and if the jury was properly instructed, the parties tend to agree either guilt or acquittal would be proper verdicts depending on how the jury resolved the controverted issues of fact.

The instruction in dispute, IPI Criminal No. 24.20 (included in the 1981 revision without significant change), provides:

"A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

This instruction is substantially a restatement of section 7—7(a) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 7—7(a)). This subsection is one of numerous subsections under the general title of the article "Justifiable Use of Force; Exoneration."

The right of a peace officer to use reasonable force in the arrest of an offender or the prevention of his escape is described in section 7—5(a) and (b) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 7—5(a), (b)). Section 7—7(a), the section of the statute which as I have suggested earlier is the basis of the instruction in question, is described in the Committee Comments in Smith-Hurd Illinois Annotated Statutes as "* * * a corollary to the justification accorded to an officer or deputy in using force to make an arrest, even if the arrest, without his knowledge, is unlawful: the person arrested is not privileged to resist the arrest with force. This provision is a deterrent to the resort to force by such a person, upon his own conclusion that the arrest is unlawful, in preference to the use of the methods provided by law for obtaining his release and redress for the unlawful arrest. * * *." (Ill. Ann. Stat., ch. 38, par. 7—7(a), Committee Comments, at 422 (Smith-Hurd 1972).) This rule is of fairly

recent origin. See, *e.g., People v. Doody* (1931), 343 Ill. 194, 175 N.E. 436, where the legality of the arrest is required to be shown in the case of a defendant charged with homicide of a peace officer attempting to arrest the defendant without a warrant.

By describing section 7—7(a) as a corollary to section 7—5, an observation which is confirmed by the language of the two sections, the interdependence of the sections is demonstrated. Under some circumstances section 7—7(a) may be regarded as a general rule modified in some respects by the provisions of section 7—5. For example, the authorization to use reasonable force to effect an arrest included in 7—5(a) also requires in subsection (b) that the peace officer believe the arrest to be lawful. No such limitation appears in section 7—7(a), and if the literal language of 7—7(a) were applied the belief of the peace officer would be immaterial. (See *People v. Young* (1968), 100 Ill. App. 2d 20, 241 N.E.2d 587.) Both the parties and the majority of the court agree no issue concerning probable cause for making a lawful arrest was raised at trial. Yet, the instruction No. 24.20 is justified by the majority in large measure because it supports that part of the charge that defendant's conduct was without legal justification. Since no issue concerning the lack of probable cause for making the arrest was raised and since the use of some force by the peace officers was admitted as a part of their testimony, section 7—7(a) and the instruction based thereon were inapplicable to the facts. An instruction based on section 7—5 covering the right of the peace officers to use reasonable force not only would have been applicable to the facts but would have avoided interjecting into the case two other irrelevant issues, namely, the defendant committed the offense of resisting arrest, an offense for which he was not charged, and the ambiguity surrounding the prohibition against opposing an unlawful arrest. As a term of art, an unlawful arrest may refer to the absence of legal cause for making the arrest, but it may also include the method of executing the arrest. By making no exception to the unlawfulness which the offender is prohibited from opposing, this instruction justifies both unlawful cause as well as means. I am very well aware of the rule that says instructions should be considered as a whole, and this is the rule which the majority has relied on to avoid the adverse consequences of the instruction having been given. By relying on the rule there is at least an implicit recognition the instruction in question is inadequate or objectionable in some respect, but other instructions are deemed to have controlled or obviated the unfavorable effect. As applied to the instruction in question, I do not see how the other instructions can have the curative effect claimed. The instruction purports to prohibit a defendant from opposing any arrest even if the arrest be unlawful without in any way suggesting that an arrest may be executed by unlawful means such as the unreasonable use of force

which the defendant is not prohibited from opposing. Even though the issues instructions were modified to ameliorate the effect somewhat, the fact remains that this instruction was contrary to the issues instructions and in effect left the jury free to select and choose which rule it thought it ought to apply.

I believe the foregoing observations amply support the further comment by the drafters of the Criminal Code when, as a further comment to section 7—7(a) in Smith-Hurd Annotated Statutes, they observe that section 7—7(a)

"* * * does not apply to the situation in which the officer uses excessive force: whether the arrest is lawful or unlawful, the officer's use of excessive force invokes the right of self-defense in Section 7—1." Ill. Ann. Stat., ch. 38, par. 7—7(a), Committee Comments, at 422-23 (Smith-Hurd 1972).

This brings me to a consideration of the two cases which have previously considered this instruction, *People v. McCauley* (1972), 2 Ill. App. 3d 734, 277 N.E.2d 541, holding the instruction erroneous, and *People v. Paez* (1977), 45 Ill. App. 3d 349, 351, 359 N.E.2d 1083, approving the instruction. In declining to follow the result in *McCauley* the court in *Paez* relied on differences in facts which it believes justifies a difference in result. Even in its own terms it is difficult to understand why a distinction should exist. In *Paez* the court observed, "It is, of course, error to interject irrelevant issues into jury deliberations and to instruct as to crimes not charged. (*People v. McCauley*, 2 Ill. App. 3d 734, 736 (1972).)" Notwithstanding this declaration, the court in *Paez* approved the instruction which it believed did refer to a crime not charged, and it did so without any special limitation on the principle which it initially announced and approved. What *Paez* does say is that perhaps there is a difference in whether the instruction should be given depending on the stage of the arrest, distinguishing between the stage of the arrest where the offender is being transported and where he is being initially apprehended. In terms of using force to oppose an arrest I see no difference. In terms of resisting an arrest as an offense no cases are cited which support the court's distinctions. The two cases cited by the *Paez* case, *People v. Gnatz* (1972), 8 Ill. App. 3d 396, 290 N.E.2d 392, and *People v. Brown* (1974), 18 Ill. App. 3d 1049, 310 N.E.2d 498, are of little support for the result reached. Even though neither the *Paez* nor *McCauley* case address the essential problem created by this instruction as applied to the use of force to resist unreasonable force, I think the *McCauley* result is the more appropriate one, and I am not persuaded by *Paez* that a contrary result is warranted.

In summary, I believe the instruction was improperly given because

it was inapplicable to any theory supported by the facts and further that it prejudicially deprived defendant of a fair trial.