THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN TAYLOR, Defendant-Appellant.

Fifth District   No. 76-458

Opinion filed September 23, 1977.—Rehearing denied October 20, 1977.

Dennis J. Hogan, of Murphysboro, for appellant.

James E. Dull, State's Attorney, of Mt. Vernon (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Melvin Taylor, was found guilty of aggravated battery after a jury trial in the circuit court of Jefferson County in which the jury found him guilty on three counts of a four count information. Defendant Taylor was subsequently sentenced to three years probation, one condition of which was that he serve six months periodic imprisonment. He appeals.

Defendant presents four issues for review which we feel should be quoted in full rather than paraphrased or summarized by this court:

"(1) Whether the court lost jurisdiction of the cause by reason of there being no evidence to support the jury's findings as to a material allegation in each of three counts on which the jury brought in guilty verdicts?

(2) Whether the interest of the State in pursuing the path of this 75—CF—130 prosecution was abated when, prior to being afforded post-arrest judicial hearing, the defendant sued the alleged victim and the venue's sheriff jailer for falsely arresting and imprisoning the defendant from the time of the alleged victim's violent tackle stop of the defendant's locomotion.

(3) Whether the State's action or inaction deprived defendant of his constitutionally secured substantive right to a fundamentally fair jury trial?

(4) Whether, as a matter of law, there was reasonable doubt that defendant used the degree of force he used without justification and also as a matter of law, there is *no doubt* the defendant appellant was unduly detained in this event making appellant due the exercise of this court's Rule 366(a), power to enter a judgment in favor of Melvin Taylor and against the venue party in the amount of $10,000.00."

At trial the State's evidence showed that around 7:15 p.m. December 11, 1975, police officer Mark Drake was alone in a squadrol, making a routine patrol in the south district of Mt. Vernon. He saw a man, the defendant, walking down an alley. The officer then saw a group of men run out of a parking lot. One of these men whistled and shouted at the

officer, requesting him to stop the defendant. Officer Drake parked his marked police vehicle beneath a street lamp and got out. He was dressed in full uniform. The defendant was then running toward Officer Drake. The officer twice asked the defendant to stop, but in the words of the officer, "he refused, and tried to get past me." The officer attempted to stop him by grabbing defendant. According to Officer Drake, defendant's momentum carried them to the ground and a scuffle ensued in which defendant hit the officer on the chin with his fist. The officer told him to calm down as all he wanted to do was talk to him. The defendant continued to struggle, kicking the officer in the shins. Officer Drake testified that when it became evident that the defendant was not going to calm down but continue to resist, he told defendant he was under arrest. An attempt to handcuff defendant while on the ground was unsuccessful. The officer then got him up on the trunk portion of the squadrol but was not able to get handcuffs on defendant until some onlookers assisted him at his request.

Officer Drake testified that as he put defendant into the back seat of the police car, the defendant kicked him twice in the groin area. Drake further testified that he then got behind the wheel of the car. As he was radioing for assistance, defendant kicked him in the back and the back of the head. The defendant next kicked his way over and into the front seat. Several police officers subsequently arrived on the scene in response to Officer Drake's call. Sergeant Ray Bravard and Assistant Chief Irwin helped Officer Drake return defendant to the rear seat. Officer Drake got behind the wheel, but before he could drive off, defendant again kicked him in the back of the head. Officer Drake helped restrain defendant until Sergeant Bravard had adequately pinioned defendant's legs with his own leg. They thereafter transported defendant to the county jail.

The State also presented testimony from four occurrence witnesses and Sergeant Bravard. Their testimony basically corroborated Officer Drake's account of the incident. Three of the onlookers confirmed that Drake, while using the radio, was kicked in the back of the head or shoulder area. Two of these witnesses testified they saw his head move forward after these blows were delivered. Witness Mark Harris further testified that he attracted Officer Drake's attention by whistling and yelling, "Stop him, he is the one." Sergeant Bravard corroborated Officer Drake's testimony that the defendant kicked him in the back of the head as he was preparing to drive to the police station.

Defendant put on several witnesses. One witness, who apparently viewed the incident almost in its entirety, testified that a policeman was choking defendant, beating him with his fist, and "throwing" him into the police car. This witness further related that a person other than the officer hit defendant with a nightstick and that the defendant never struck the

officer, having no chance to do so. Two other defense witnesses, who both arrived after defendant was handcuffed, testified about the defendant's treatment. One testified that a policeman was choking defendant and that a nonuniformed person brandished a nightstick but did not strike the defendant. The other witness testified that one policeman was beating defendant with his fist while another policeman and "civilian" both hit the defendant with nightsticks.

Three rebuttal witnesses for the State related that they saw no one hit, choke or strike defendant with nightsticks.

On December 12, 1975, the day after this incident, an information was filed charging defendant with aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6)). Counts II, III, and IV of this information, the counts the jury found defendant guilty of, described respectively the kick to the groin area, the kick to the back and back of the head, and the second kick to the back of the head. Also on December 12, bail was set and an arrest warrant issued and returned. Defendant was released on bond on December 15, 1975, after executing a bail bond with sureties. Ill. Rev. Stat. 1975, ch. 38, par. 110—8(a)(2).

Defendant's first issue presents the question of whether the element of harm was sufficiently proved to support his conviction for aggravated battery. He argues it was not proved sufficiently, stressing the fact that there was no evidence at trial of medical treatment, visible injuries, or subjective symptoms of harm. Defendant directs our attention on this issue to *People v. Crane*, 3 Ill. App. 3d 716, 279 N.E.2d 134.

The sections of the Criminal Code of 1961 relevant to defendant's conviction are 12—3(a) and 12—4(b)(6) (Ill. Rev. Stat. 1975, ch. 38, pars. 12—3(a) and 12—4(b)(6)).

Section 12—3(a) defines battery as follows:

"A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."

Section 12—4(b)(6) of the Code, under which defendant was convicted, provides that a person commits aggravated battery when:

"(b) A person who, in committing a battery * * *:

(6) Knows the individual *harmed* to be a peace officer, * * * while such officer is engaged in the execution of any of his official duties including arrest or attempted arrest; * * *." (Emphasis added.)

In *People v. Crane*, this court held that the term "harmed" as used in the statute is limited to actual physical harm and reversed a conviction for aggravated battery based on subsection (3) of section 12—4(b) of the Criminal Code, which provides that one commits an aggravated battery

when in committing a battery he knows the individual *harmed* to be a school teacher, and the teacher is on the grounds of a school or grounds adjacent thereto. The analysis in *Crane* was based upon a comparison of the terms used in Section 12—4(b). The court stated:

"Subsection (3) through Subsection (9) of section 12—4(b) cover various circumstances in which an aggravated battery might arise. All of the subsections, except subsection (8) begin with the clause 'knows the individual *harmed*'. (Our emphasis.) Subsection (8) however, begins: 'is, or the person *battered* is'. (Our emphasis.)

The word 'battery' is defined in Section 12—3(a) to include both the causing of bodily harm and physical contact of an insulting or provoking nature. Since the legislature used the words 'harmed' and 'battered' in other parallel subdivisions of section 12—4(b), we conclude that they meant something different by the two terms. Accordingly, we conclude that the term 'harmed' refers to actual physical harm and the term 'battered' refers to a battery as defined in section 12—3(a)." 3 Ill. App. 3d 716, 719-720, 279 N.E.2d 134, 137.

Faced with conflicting evidence as to whether defendant took the teacher by the arm, pulled on her sleeve, tapped her on the shoulder or arm, or took her by both arms and turned her body around, the *Crane* court concluded that defendant may have *battered* the teacher by a contact of an insulting or provoking nature but she did not *harm* the teacher and, therefore, could not be convicted of aggravated battery under section 12—4(b)(3) (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(3)).

Although *Crane* does indicate that a conviction under a subsection of the statute using the term "harmed," as the instant subsection does, requires a finding of physical harm, the dissimilar nature of the proof of defendant's conduct in that case as compared to the instant cause makes it of little value for the resolution of the issue at hand.

■■ First, we note that there is no requirement that the evidence demonstrate a visible injury such as bruising, scratching or bleeding to establish bodily harm in a battery case. *People v. Brown*, 18 Ill. App. 3d 1049, 310 N.E.2d 498; *People v. Paez*, 45 Ill. App. 3d 349, 359 N.E.2d 1083.

In *People v. Brown*, the State's evidence revealed that while police officers attempted to arrest defendant, who had broken into his daughter's house to continue a marital argument, the defendant hit one of the officers in the chest and kicked him in the leg. Defendant denied doing such and contended on appeal that the State had not met its burden of proof as to element of bodily harm for his aggravated battery conviction. The court there held that where there was direct testimony from the complaining officer that he was struck and kicked by defendant, it was a question for the jury whether this constituted bodily harm. The positive

testimony of the officer although contradicted was deemed sufficient to support the jury's finding. 18 Ill. App. 3d 1049, 1054.

In *People v. Hayes*, 15 Ill. App. 3d 851, 305 N.E.2d 283, defendant also asserted that there was insufficient evidence to prove the requisite harm for aggravated battery. A police officer testified that upon the arrested defendant's refusal to answer certain questions put to him, the officer began to get up out of his chair to leave the room when defendant kicked him in the groin area. Defendant maintained the kick was an accident. The court found there was sufficient evidence before the trial court which, if believed, would establish the conclusions necessary to a conviction including that such a kick in the groin area caused great bodily harm.

■■ Similarly, we believe there was sufficient evidence before the jury in this case from which it could conclude there was physical harm to the officer as a result of the various kicks delivered to his groin and head area. The evidence establishes that Officer Drake was in close proximity to defendant when these kicks were delivered. In addition, several witnesses testified that he was propelled forward by the first kick defendant delivered while Drake was in the front seat of the car. This evidence, combined with the jury's common knowledge, is sufficient to establish that defendant's conduct caused bodily harm. Although it came too late for jury consideration, Officer Drake testified at the sentencing hearing that he was stiff, suffered headaches, and experienced pain and swelling in his groin area for a period of several days.

We have put forth much effort in trying to understand the argument made by defendant in respect to the second issue he has raised on appeal. His argument is not clearly stated. His main contention appears to be that the court improperly proceeded to trial on this criminal charge because he filed a civil suit against Officer Drake and the county sheriff for false arrest and imprisonment prior to the holding of a preliminary hearing in this case. He argues that a hearing should first have been had on the civil case where jurisdiction is presumed rather than on the aggravated battery charge where jurisdiction is not presumed and that he was prejudiced by the criminal trial being conducted first.

■■ The State contends that defendant has waived this issue for purposes of appeal since it was either not included in his post-trial motion (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856), or alluded to in such a general manner as not to have alerted the court to the alleged error. (*People v. Witherspoon*, 33 Ill. App. 3d 12, 337 N.E.2d 454; *People v. Nunez*, 24 Ill. App. 3d 163, 320 N.E.2d 462.) We are inclined to agree with the State that the only allegation which appears related to this contention is too general to preserve any asserted error in this matter. The last

sentence of defendant's post-trial motion, which runs over three pages in length, merely recites: "Also, 75—L—42, Count I is an action pleaded in abatement."

Even if we were to decide this issue on its merits, we would not find for defendant. Defendant has directed us to no authority which supports his proposition that his criminal prosecution should have been abated by the filing of a civil suit against a complaining officer and other authorities prior to a preliminary hearing, and our research has disclosed none. We fail to perceive any prejudice to defendant's rights resulting from the prosecution of defendant's criminal case prior to his civil suit.

Defendant makes various diverse complaints of impropriety in his argument in support of the above contention which we have considered carefully and found without merit. We see no necessity to lengthen this opinion by enumerating them here.

Defendant's third issue concerning denial of a fair trial has two components. The first contention is that reversible error resulted from the conduct of the prosecutor at trial. Defendant directs our attention to remarks of the prosecutor in his opening statements and closing arguments and lines of questioning pursued in the State's case. The statements and questions are too numerous to be set out here. The main objections of defendant to the remarks and questions are that they accuse defendant of illegal conduct for which he was not on trial and express the belief of the prosecutor in defendant's guilt. The implications of other crime stemmed from statements or questioning bearing on the circumstance that at the time Officer Drake came upon the scene defendant was being chased by a group of men shouting for the officer to stop him.

We have examined the record and find that the portions objected to do not present reversible error.

It is well settled that a reversal is not warranted unless it appears that improper remarks complained of influenced the jury in a manner that resulted in substantial prejudice to the accused. *People v. Bell*, 27 Ill. App. 3d 171, 326 N.E.2d 507; *People v. McCorry*, 51 Ill. 2d 343, 282 N.E.2d 425.

■■ In the instant case, we note that the jury found defendant not guilty as to count I of the information. This fact alone tends to show that the jury was closely scrutinizing the evidence rather than being swayed by the prosecutor's comments. Moreover, we note that substantially all of the remarks and questions complained of were objected to by defendant and that these objections were promptly sustained by the court. The jury was instructed as to the purpose of opening statements and closing argument and told that neither constituted evidence and that any

statement or argument not based on the evidence should be disregarded. (IPI Criminal No. 1.03.) In addition, no detailed or specific reference to any other criminal conduct by defendant is anywhere reflected in the record. Moreover, the circumstances surrounding Officer Drake's intervention into the scene he came upon were relevant to the question of whether he was engaged in the execution of any of his official duties. The expression of the prosecutor's belief in defendant's guilt when considered in context shows that it was based on the evidence and was not his personal opinion. A prosecutor may argue or express his opinion that the accused is guilty where he states or where it is apparent that such an opinion is based solely on the evidence. (*People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601.) Under the circumstances of this case noted above, we must conclude that no substantial prejudice to the accused resulted from the prosecutor's remarks or questions and that these remarks were not a material factor in defendant's conviction. *People v. Fields*, 59 Ill. 2d 516, 322 N.E.2d 33.

Defendant next contends that the court erred in giving, over his objections, People's Instructions Nos. 7, 8, and 9, arguing that "all of evidence showed that Officer Drake was not, ipso facto, within the scope of dutiful employment" when he "tackled stopped" defendant.

State's Instruction No. 7, a non-IPI instruction, is a direct quote of section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c)), which states that a peace officer may arrest a person when he has reasonable grounds to believe the person is committing or has committed an offense. Instruction No. 8, IPI Criminal No. 24.12, relates that a peace officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest and that he is justified in the use of any force he reasonably believes necessary to effect the arrest or to defend himself from bodily harm while making the arrest. Instruction No. 9 is also a pattern instruction (IPI Criminal No. 24.20). It states:

"A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." See Ill. Rev. Stat. 1975, ch. 38, par. 7—7.

■■■ The function of instructions to the jury is to convey to the mind of the jury the correct principles of law applicable to the evidence submitted to it, so that the jury may, by application of the proper legal principles to the facts, arrive at a correct conclusion according to the law and the evidence. (*People v. Mitchell*, 27 Ill. App. 3d 117, 327 N.E.2d 158.) We find after examining the evidence and the other instructions in this case that these instructions were properly given to the jury so that

they could apply the applicable law to the facts. It is clear that an arrest was involved here, and consequently the jury was benefitted by Instruction No. 7, explaining when a peace officer may arrest a person, and Instruction No. 8, stating the amount of justifiable force a peace officer may use in making an arrest. Moreover, a necessary element of the instant crime is that defendant acted without legal justification. (*People v. Brown; People v. Gnatz*, 8 Ill. App. 3d 396, 290 N.E.2d 392.) Instruction No. 9 directly related to defendant's lack of justification.

Defendant finally contends: (1) that, as a matter of law, there was a reasonable doubt that defendant employed the degree of force he did without justification, and (2) that he was unduly detained in this case entitling him to our entry of a $10,000 judgment in his favor against his civil defendants pursuant to our powers under Supreme Court Rule 366(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a)). We find no merit to either contention.

■■ ■ Defendant argues that "[s]ince neither the venue nor the Officer has pleaded and proved any pre-arrest corpus delecti [for the "warrantless tackle arrest"] * * *, Melvin Taylor's use of the force he used was reasonable self-defense as a matter of common law." First, we note that it is inequitable for defendant to scrupulously, though properly, oppose any exposition at trial as to what acts of defendant, if any, prompted the crowd of men to be chasing defendant, and then to urge on appeal that the failure to reveal a previous offense raises a reasonable doubt as to his justification in resisting Officer Drake's attempt to stop him. Regardless of whether the officer's initial grabbing of defendant after he refused to stop on command and attempted to run by the officer was intended to be a warrantless arrest or an investigatory stop pursuant to section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—14), we believe that a reasonable doubt of his justification in kicking the officer cannot be declared as a matter of law. As already noted, one is not warranted in using any force to resist his arrest by a person he knows to be a peace officer, even though the arrest may be an unlawful one. *People v. Locken*, 59 Ill. 2d 459, 322 N.E.2d 51; *People v. Shinn*, 5 Ill. App. 3d 468, 283 N.E.2d 502; *People v. Gnatz.*

■■ Defendant's argument that this court is empowered pursuant to Supreme Court Rule 366(a) to enter in this criminal appeal a money judgment in his favor for an alleged undue detention prior to a preliminary hearing does not warrant more than cursory consideration. First, Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366) does not apply to criminal appeals. (See Supreme Court Rule 612 (Ill. Rev. Stat. 1975, ch. 110A, par. 612).) Our powers of disposition in criminal appeals are set forth in Supreme Court Rule 615(b) (Ill. Rev. Stat. 1975, ch. 110A, par.

820

615(b)), and they do not encompass entering a money judgment in favor of defendant for an alleged deprivation of rights.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed.

CARTER, P. J., and EBERSPACHER, J., concur.