THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and
Petitioner-Appellee, *v.* JAMES LEPPERT, Defendant and
Respondent-Appellant.

Second District No. 79-634

Opinion filed March 29, 1982.—Rehearing denied April 28, 1982.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Respondent was tried in Kendall County for attempt (murder) and the jury returned a verdict of not guilty by reason of insanity. Thereafter, a hearing was held before another jury to determine whether he should be involuntarily committed, pursuant to section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4). The jury found him to be a person subject to involuntary admission to a mental health facility. The court committed him to a mental health facility for an indefinite period of time not to exceed 10 years.

Respondent has a history of psychotic behavior. He suffered brain damage in an automobile accident on March 5, 1977. His condition required occasional hospitalization and medication, including valium. In the summer of 1978 he was a patient at Mercyville Hospital where he was diagnosed as psychotic, or out of touch with reality. He had signs of schizophrenia and depression. Upon his release from the hospital in August 1978 his prognosis for improvement was good, but this worsened due to respondent's nonadherence to suggested therapy.

The attack which prompted the charge occurred in the early morning hours of February 3, 1979. Respondent's father, Oliver Leppert, was awakened by a thump on his chest. By the light of the street lamp Oliver

could see an arm with a knife. He could not see who his assailant was. He grabbed the individual and pushed him into the kitchen. He then realized his assailant was his son. Respondent informed his father that he had taken his entire supply of valium. He had refilled a prescription that day, obtaining 100 5-milligram tablets. Respondent was brought to the hospital where he was treated for a valium overdose.

Oliver suffered a large bruise and a very slight scratch on his chest. The knife used in the attack was a kitchen knife, 10 to 12 inches long. Its blade was bent, although before the attack it had been straight.

The day after the attack Oliver visited respondent at the hospital. In his only reference during the visit to the incident respondent said to Oliver, "Well, did I not use the longest knife, and did I not aim for your heart?"

When interviewed by a psychiatrist on March 14, 1979, respondent related that at the time of the attack he knew what he was doing but he believed the knife would bend and not kill his father.

Respondent first argues that because he was found to be insane at the time of the attack, that is, that "as a result of mental disease or mental defect, he lack[ed] substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law" (Ill. Rev. Stat. 1977, ch. 38, par. 6—2(a)), he lacked the requisite intent to attempt a murder and cannot have been found not guilty of attempt (murder) by reason of insanity. He contends that he should have been found not guilty of aggravated battery, a crime of general, not specific, intent, by reason of insanity. Respondent raises this issue, although the judgment was an acquittal, because when one is found not guilty of an offense by reason of insanity the maximum possible length of commitment to a mental health facility is based upon the maximum possible length of imprisonment that could have been imposed had defendant been found guilty of an offense. Section 5—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b)) provides that "the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." Aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(d)) and therefore the maximum time for involuntary commitment could be only 2½ years. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(6).) For attempt (murder) the maximum commitment is 15 years. Ill. Rev. Stat.

1977, ch. 38, par. 8—4(c), and Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(3).

■■ Respondent had moved for a directed verdict at the close of the State's evidence arguing that the State failed to prove the element of a specific intent to kill. We agree with the State, however, that the evidence of respondent's comment to his father, "Well, did I not use the longest knife, and did I not aim for your heart?" was sufficient evidence of intent to kill to put the question whether respondent held the specific intent to kill to the jury. The trial court properly refused to direct the verdict for defendant.

Respondent apparently believes, however, that the evidence adduced at the trial can only support a finding that aggravated battery was the offense committed and that we can and must reduce the degree of the offense from attempt (murder) to aggravated battery.

After reviewing the evidence we are not convinced that the offense committed was unquestionably aggravated battery and that respondent had not intended to kill his father. This is a close case factually, and it would have been possible to find either that the offense committed was attempt (murder) or that the offense was aggravated battery. Therefore, this is not a case in which we feel empowered to reduce the severity of the offense.

The jury was never instructed regarding aggravated battery. Respondent never tendered such an instruction to the court.

It is a general rule that when a defendant fails to tender an instruction a reviewing court cannot reverse for the failure to so instruct the jury. The defendant has waived the issue. (*People v. Goodman* (1981), 98 Ill. App. 3d 743, 424 N.E.2d 663.) It is true that in criminal cases the waiver rule will not prevent a review of "substantial defects" in jury instructions "if the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c); *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) It has been recognized that in homicide cases if there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter an instruction defining that offense should be given, *sua sponte* by the court if need be. *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.

■■ We have found no authority which holds that in a nonhomicide case it is required for the court to *sua sponte* give jury instructions of a lesser included offense. We will not hold so here. In a homicide case it is clear that if there is evidence to support it the lesser included offense to instruct the jury upon would be manslaughter. For other offenses the lesser included offense would not always be so obvious. *People v. Cramer* (1981), 85 Ill. 2d 92, 421 N.E.2d 189, held that a lesser included offense is to be determined by referring to the offense as it is charged in the information

or indictment. We cannot require a trial court in every jury case to search the Criminal Code to determine what offenses could be considered lesser included offenses of the offense charged as it was described in the indictment or information. We therefore hold that the trial court did not err in instructing the jury on attempt (murder) only. Further, there is evidence in the record to support the jury's verdict. We do not consider the verdict unreasonable, improbable or unsatisfactory and will therefore not disturb it. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.

Respondent next contends that he was denied a fair commitment hearing because the trial court denied his motion for a continuance which he requested in order that his attorney could study psychiatric reports and other evidence against him. Section 3—803 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—803) provides that "[t]he court may appoint one or more physicians, qualified examiners, clinical psychologists or other experts to examine the respondent and make a detailed written report of his findings regarding the respondent's condition. The report shall be filed with the court and copies shall be made available to the attorneys for the parties." Section 3—805 of the Code provides that "[c]ounsel shall be allowed time for adequate preparation * * *." (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—805.) The State petitioned for involuntary commitment immediately following the acquittal. The hearing was scheduled for July 16, 1979, but the matter was apparently continued until July 18. Two doctors ordered by the court to examine respondent did so on July 16. Their reports were not filed with the court nor made available to the parties by the day set for the hearing. Respondent's attorney requested a continuance in order that the reports could be made available to him. The court refused to continue the case, noting that the parties had earlier agreed in court that the hearing would commence on this date. The court added that either respondent's attorney would have the reports before the doctors testified or that the attorney would have a chance to examine them (meaning the doctors, apparently) before they testified. The doctors testified on July 19. Respondent's attorney had received one of the reports on the evening of July 18. The attorney did not receive the other doctor's report until a few minutes before the doctor testified. The attorney had an opportunity to speak with him before his testimony.

■■ Respondent argues that, not having the reports earlier, he was not able to anticipate some of the matters about which the doctors testified. The State argues that it was respondent's failure to request the reports through the normal discovery procedures (see Supreme Court Rule 201 *et seq.* (Ill. Rev. Stat. 1977, ch. 110A, par. 201 *et seq.*)), not the refusal to continue the matter which caused respondent to be at a disadvantage at

the hearing. This argument is specious, for there were no reports to discover prior to the evening before the scheduled hearing.

■■■ Whether to grant a continuance is within the discretion of the trial court. This discretion is not be exercised arbitrarily, however. (See *Reecy v. Reecy* (1971), 132 Ill. App. 2d 1024, 271 N.E.2d 91.) We think the proceedings were unduly rushed. Respondent's counsel expected to receive the reports on July 17, 1979. When he did not receive them by the morning scheduled for the hearing he requested and was denied a continuance. That evening he received one report, and the next day he received the other shortly before its author testified. The attorney protested to the court he did not have enough time after seeing the reports to decide whether to obtain independent examination of his client, to which he is entitled under section 3—804 of the Mental Health and Developmental Disabilities Code. (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—804.) We think respondent was placed at an unfair disadvantage by being required to proceed with the hearing when he had so little time to study the physicians' reports which were required to be made available to him, and we remand for a new commitment hearing.

We will address other issues respondent raises that are likely to be raised in the hearing on remand.

■■ Respondent argues that it was improper to allow the State to examine a psychiatrist regarding his mental state over his assertion of the therapist-patient privilege. The court ruled that respondent waived this privilege when he had the psychiatrist testify on his behalf at his criminal trial. We agree with the trial court. Respondent had the psychiatrist assist him in his attempt to prove himself insane for the purpose of excusing his responsibility for the act leading to the criminal charge. Respondent elicited the doctor's testimony relating to his insanity in order to gain acquittal. He must acquiesce to the State's use of the same doctor's testimony to prove his present insanity and so obtain a verdict that he should be committed.

■■ Should respondent be found to be in need of commitment the court must order admission to a mental health facility in accordance with section 5—2—4(b) of the Unified Code of Corrections. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b).) That section provides that "the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." The statute provides a clear formula for commitment: the time shall be indefinite, and the maximum is

set by operation of law. The maximum sentence for attempt (murder) is 30 years. (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(c), and Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(3).) With credit for good behavior, the term would be reduced to 15 years. The maximum length of time respondent may be involuntarily committed is thus 15 years. The court may not state a maximum length of commitment any different than that provided by statute.

Finally, respondent argues he should be given credit for time spent in custody. There is no provision in the Mental Health and Developmental Disabilities Code for giving credit for time served to one who is ultimately committed to a mental health facility. Respondent argues we should consider the matter as analogous to section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—7(b)), which gives credit for time served to persons convicted of a crime and sentenced to imprisonment.

■■ We do not think the matters are entirely analogous. A person convicted of a crime who receives credit for time served received credit for a period of confinement of the same nature as the confinement to which he is sentenced. Respondent was found in need of confinement and treatment in a mental health facility; from February 23, 1979, to July 20, 1979, respondent was not confined in a mental health facility but was in jail. Any consideration of credit time served would not apply to the time spent in jail. We think that should respondent be found in need of confinement in a mental health facility the length of his commitment should be computed from July 20, 1979.

We affirm the judgment of acquittal of attempt (murder) by reason of insanity, and remand for a rehearing on the issue of his involuntary commitment.

Affirmed in part, reversed in part, and remanded.

LINDBERG and NASH, JJ., concur.