THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MILDRED E. ROTUNO, Defendant-Appellant.

Fifth District    No. 5—85—0805

Opinion filed June 17, 1987.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Matoush, State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Kathy J. Greer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Mildred Rotuno, was charged by information with two counts of aggravated battery and one count of resisting a peace officer. A pretrial psychiatric examination concluded she was fit to stand trial but that at the time of the alleged offenses she lacked substantial capacity to conform her conduct to the requirements of the law due to a mental disease. Following a bench trial on stipulated facts, the circuit court of Marion County found her not guilty by reason of insanity on all three charges. The court subsequently found her subject to involuntary admission to the Illinois Department of Mental Health and Developmental Disabilities and ordered her placed in the custody of the Department for an indeterminate period not to exceed five years. Defendant appeals contending (1) the State failed to prove bodily harm for purposes of aggravated battery, (2) the court erred in denying her a continuance in order to secure an independent psychiatric examination before proceeding with the hearing which resulted in her involuntary admission, and (3) the court erred in applying extended-term sentencing provisions in setting a treatment period. We affirm in part and reverse and remand in part.

Defendant was charged with one count of resisting a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1), one count of aggravated battery alleging bodily harm to a police officer (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1); Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)), and one count of aggravated battery alleging physical contact of a provoking nature to a police officer (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(2); Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)). Defendant was tried on October 2, 1985, before the court on stipulated facts. The parties stipulated that three police officers would testify in conformity with the police report prepared by Officer Jim Sullivan of the Centralia police department. That report states:

"Approx. 1:53 p.m. 112684 P.D. received a call that Mildred E. Rotuno was at Central Comprehensive Mental Health and refused to leave and they wanted to vacate the premises. Offi-

cers Ron Edmonson and Ray Simer responded to call and I was Back-up. Off. Edmonson and Simer had to leave Mental Health and Off. Ron Edmonson and I were still in the vicinity at approx. 2:15 p.m. when we observed suspect walking down the center of east bound lane of Hwy. 161 east in front of Mental Health and she had traffic backed up on both directions for a considerable distance (approx. 15-20 car lengths). Off. Edmonson and I pulled onto Hwy. 161 and I approached suspect Mildred Rotuno and advised her that she was under arrest for improper walking on highway. Suspect Mildred took off running and I grabbed the sleeve of the sweater she was wearing trying to detain her and suspect Rotuno fell to the highway and started kicking, kicking me on the leg several times. With Off. Ron Edmonson assisting, we had to partially lift and carry suspect to squad car. At door to squad car suspect grabbed onto the metal cage and braced her body so that she was wedged in such a manner that even with both officers pushing we couldn't get her into the car. Officer Edmonson had to go to other door and was trying to pull suspect in as I was pushing but suspect was kicking me on the legs and mid-section of my body and a citizen stopped by traffic came to assist and suspect was forced into car.

At P.D. suspect Rotuno had to be carried into station and after patdown suspect had to be carried to cell."

The parties also stipulated that Dr. S.D. Parwatikar would testify in conformity with his psychiatric evaluation of defendant. Dr. Parwatikar's report concluded that defendant has a mental disease, that she was fit to stand trial, but that she lacked substantial capacity to conform her conduct to the requirements of the law at the time of the offenses.

Based upon these stipulated facts, the court found defendant not guilty by reason of insanity on all three charges on October 2, 1985, and ordered defendant committed to a mental health institution for evaluation. After receiving an evaluation on October 23, 1985, the court scheduled a hearing under section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(a)) to determine whether defendant was in need of mental health services and if so, the nature of those services. This hearing was scheduled for November 13, 1985. On November 12, 1985, defendant moved for appointment of an independent expert to examine her regarding the need for future mental health treatment, and on November 13, 1985, defendant moved for a continuance in order to obtain the independent expert's opinion. On November 13, 1985, the court denied the motion for appointment of

an independent expert. At the hearing on that date, the only witness was Dr. Saber Girgis, a psychiatrist at the Alton Mental Health Center. Dr. Girgis recommended long-term inpatient treatment for defendant. He found that she has destructive behavior, is likely to inflict harm upon others in the future, and has little understanding of the consequences of her acts. After hearing the testimony of Dr. Girgis, the court found that defendant was subject to involuntary admission to the Illinois Department of Mental Health and Developmental Disabilities and was to be placed in the custody of the Department for an indeterminate period not to exceed five years.

■ Defendant first contends she should have been acquitted on the aggravated battery count alleging bodily harm to a police officer instead of being found not guilty by reason of insanity because there was insufficient evidence of bodily harm. The underlying battery supporting this charge is based upon section 12—3(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par.12—3(a)(1)), which states that "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, *** causes bodily harm to an individual." The State sought to enhance the charge to aggravated battery based upon section 12—4(b)(6) of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)), which states that a person commits aggravated battery if, in committing a battery, he knows the individual harmed to be a peace officer. Defendant argues an outright acquittal was required on this charge because there was no evidence that Officer Sullivan suffered any bodily harm.

This court has found that there need not be direct evidence of injury to sustain a conviction of battery based upon bodily harm. In *People v. Taylor* (1977), 53 Ill. App. 3d 810, 368 N.E.2d 950, the evidence showed the defendant had kicked a police officer in his groin and head areas while the two were in close proximity. We concluded that "[t]his evidence, combined with the jury's common knowledge, is sufficient to establish that defendant's conduct caused bodily harm." (53 Ill. App. 3d 810, 816, 368 N.E.2d 950, 955.) We adopted the reasoning from *Taylor* in our decision in *People v. Tripp* (1978), 61 Ill. App. 3d 507, 378 N.E.2d 273, where a defendant struck a police officer in the face with his fist and struck him in the side with a stapler. We found that while the resulting injuries may have been relatively minor, the evidence was sufficient for the court to conclude the officer suffered actual bodily harm. 61 Ill. App. 3d 507, 510, 378 N.E.2d 273, 274.

In the present case, the evidence showed defendant kicked Officer Sullivan on his legs and mid-section while he and another officer were trying to push defendant into a police car. Sullivan's report states that

"even with both officers pushing, we couldn't get her into the car." It was not until a citizen stopped to assist that defendant was finally forced into the car. Clearly defendant was strongly resisting the officers and was attempting to free herself from them. This evidence, combined with the fact finder's common knowledge, constituted sufficient evidence that Officer Sullivan suffered bodily harm when defendant kicked him on the legs and mid-section as she tried to escape. (See *People v. Taylor* (1977), 53 Ill. App. 3d 810, 816, 368 N.E.2d 950, 955.) Our supreme court has stated that "[a]lthough it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required." *(People v. Mays* (1982), 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36.) The evidence in the present case was sufficient to prove circumstantially that Officer Sullivan suffered some physical pain. We believe the facts here are much stronger than those in *People v. McBrien* (1986), 144 Ill. App. 3d 489, 494 N.E.2d 732, relied upon by defendant, where the victim police officer who had been sprayed with Mace testified he felt only a tingling sensation on his forehead and arm when the defendant sprayed something on him. Therefore, we find there was sufficient evidence to support a finding defendant had intentionally or knowingly caused bodily harm to a person she knew to be a police officer.

Defendant next contends the court erred in denying her a continuance in order to secure an independent psychiatric evaluation prior to the hearing which resulted in the court ordering her involuntarily admitted and placed in the custody of the Mental Health Department for a period not to exceed five years. Defendant argues that under section 3—804 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 3—804), she was entitled to such an independent examination.

Defendant was found not guilty by reason of insanity on October 2, 1985. On that date, the court ordered her committed to a mental health institution for evaluation as provided by section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(a)), to determine whether she was subject to involuntary admission or in need of mental health services. The court also ordered the Department of Mental Health and Developmental Disabilities to provide it with a report of its evaluation within 30 days, as is also required by this section. This report was filed with the court on October 23, 1985. On this date, the court scheduled a hearing for November 13, 1985, to comply with the provision of section 5—2—4(a) which states: "The Court

shall hold a hearing as provided under the Mental Health and Developmental Disabilities Code to determine if the individual is: (a) subject to involuntary admission; (b) in need of mental health services on an inpatient basis; (c) in need of mental health services on an outpatient basis; (d) a person not in need of mental health services." Because this section provides that the hearing is to be held according to the provisions of the Mental Health Code, we turn there to determine whether defendant had a right to an independent evaluation prior to the hearing.

Section 3—804 of the Mental Health Code provides:

> "The respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist or other expert of his choice. If the respondent is unable to obtain an examination, he may request that the court order an examination to be made by an impartial medical expert pursuant to Supreme Court Rules or by a qualified examiner, clinical psychologist or other expert. Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule." (Ill. Rev. Stat. 1985, ch. 91½, par. 3—804.)

Defendant correctly argues this section applies in her situation. The court in *People v. Leppert* (1982), 105 Ill. App. 3d 514, 434 N.E.2d 21, applied this section to a proceeding under section 5—2—4(a) of the Code of Corrections for a defendant found not guilty by reason of insanity, the same circumstances presented here. We agree with defendant that she had a right to secure an independent examination by an expert of her choice pursuant to section 3—804.

■ The State argues, however, that under section 5—2—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par.1005—2—4(f)), defendant is entitled only to an expert who is not employed by the Department of Mental Health, and that because her chosen expert, Dr. Edward Bellamy, is employed by the Department, the court properly denied her request for an independent evaluation. This argument is without merit. Section 5—2—4(f) applies only when a person who has already been committed to a mental health facility for treatment files a petition for discharge or conditional release under section 5—2—4(e). It does not apply to a hearing under section 5—2—4(a) to determine whether a person is subject to involuntary admission or in need of mental health services. As was indicated in *Leppert*, section 3—804 of the Mental Health Code is the applicable provision regarding independent evaluation for a defendant awaiting a hearing under section 5—2—4(a) of the Code of Corrections.

■ The State further argues that defendant's motion for an inde-

pendent evaluation was untimely in that it came one day prior to the hearing on whether defendant was subject to involuntary admission or in need of mental health services, and that the court had discretion to deny the motion for continuance on this ground. In *People v. Leppert* (1982), 105 Ill. App. 3d 514, 434 N.E.2d 21, a defendant who had been found not guilty by reason of insanity requested a continuance in order for his attorney to study psychiatric reports and other evidence against him in preparation for a commitment hearing. The trial court denied the motion. The appellate court found that the defendant had the right to an independent evaluation under section 3—804, and also cited section 3—805, which states that "[c]ounsel shall be allowed time for adequate preparation and shall not be prevented from conferring with the respondent at reasonable times nor from making an investigation of the matters in issue and presenting such relevant evidence as he believes is necessary." (Ill. Rev. Stat. 1985, ch. 91½, par. 3—805.) The court then concluded the continuance should have been granted because "the proceedings were unduly rushed." (*People v. Leppert* (1982), 105 Ill. App. 3d 514, 519, 434 N.E.2d 21, 24.) While counsel in *Leppert* had virtually no time to prepare or obtain an independent evaluation, we believe the court's analysis can be applied in the present case.

Here, the court found defendant not guilty by reason of insanity on October 2, 1985. The report recommending inpatient treatment was filed on October 23, 1985. The hearing was scheduled for November 13, 1985. On November 12, 1985, defendant's counsel moved for the appointment of an expert. Counsel stated that he had learned only a few days earlier that Dr. Parwatikar, who had evaluated defendant prior to trial, was unavailable to testify at the November 13 hearing and that more time was needed for another psychiatrist, Dr. Bellamy, to evaluate defendant. We believe the court should have granted defendant more time to obtain an independent evaluation. Only approximately three weeks had passed between the time the report by the Department was filed and the time of the hearing. Counsel stated he had been attempting to secure the presence of an expert on defendant's behalf during this time. Defendant was entitled to an independent examination under section 3—804 of the Mental Health Code. Furthermore, as noted in *Leppert*, section 3—805 of the Code (Ill. Rev. Stat. 1985, ch. 91½, par. 3—805) provides that counsel shall be allowed time for adequate preparation and shall be allowed to make an investigation of the matters in issue. These safeguards are crucial to a person in defendant's situation. At stake is no less than defendant's liberty. The State, meanwhile, has failed to show how it would have been prejudiced by a continuance. Defendant had been ordered committed to a mental health institution

for evaluation and remained confined pending the hearing.

Therefore, we believe that in the circumstances presented here, defendant should have been granted a continuance to secure an independent evaluation. Consequently, we reverse the trial court's order finding defendant subject to involuntary admission and remand the cause for a new hearing under section 5—2—4(a) of the Unified Code of Corrections. Upon remand, defendant is to be granted sufficient time to obtain an independent evaluation as provided by section 3—804 of the Mental Health Code.

Due to this conclusion, we do not reach defendant's remaining issues regarding application of the extended-term sentencing provisions.

For the foregoing reasons, we affirm the judgment of the circuit court of Marion County finding defendant not guilty by reason of insanity of two counts of aggravated battery and one count of resisting a peace officer. We reverse the trial court's decision finding defendant subject to involuntary admission and remand for a new hearing on the issue of whether defendant is subject to involuntary admission or in need of mental health services.

Affirmed in part, reversed and remanded in part with directions.

KARNS, P.J., and KASSERMAN, J., concur.