THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN ARTHUR ROBINSON, Defendant-Appellant.

Fourth District No. 14974

Opinion filed February 16, 1979.

Ronald L. Carpel, of Carpel & Bourey, of Decatur, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

This case involves the robbery of a pool "hustler" by his victim, whose defense is that he's merely retaking his own property obtained from him by illegal gambling.

Can he get away with it?

Not in Illinois.

Two wrongs do not make a right.

The jury conviction for armed robbery and the 10- to 30-year sentence are affirmed.

The testimony is long and—at times—somewhat confusing. But from it the jury could easily have concluded exactly what the defendant said happened and what the uncontroverted portions of the evidence reflected. It seems that Tony Perry and a friend, Emil Glocar (also known as Eddie Kovac), were passing through Decatur on their way to Kentucky. While in Decatur on September 22, 1977, Perry was playing pool at the Hotel Orlando pool hall with one Mike Wilder and betting on the games. Perry had won approximately $150 from Wilder during the three or four hours that they had been playing. At about 8 that evening defendant Robinson placed a $200 bet with Glocar or Perry. It seems clear that defendant Robinson was backing any bets on Wilder in the games against Perry. It also seems that any money that was won by Wilder would be shared equally between defendant Robinson and Wilder. Although Perry admitted that he and Glocar shared expenses on their trip and had been friends for three or four years, he denied that they were partners in any pool betting scheme.

The games went on for two days and defendant testified that he lost approximately $1,000 during that period. On the evening of the second day, defendant was told by his brother that he was being hustled. So he went to the pool hall, bet an additional $200 with Perry, lost the remaining games to Perry, and then demanded his money back. Perry shrugged it off and told defendant he would pay for the time on the pool table. Perry then went over to the bartender, and he and Glocar each collected $400. After they had picked up their money, defendant Robinson pulled a gun and demanded his $200 back. Perry counted out $200 and then put it on the bar. Someone picked it up, gave it to the defendant, and Robinson left the hotel. Perry admitted that at the time the defendant demanded the $200 back, he had much more money than that on him, but that the defendant had only asked for the $200.

The fulcrum of the case is a unique question which we apparently grapple with for the first time in Illinois. It pivots on the ownership of the

money taken. This issue can be synthesized into: Whether the retaking of gambling losses by force constitutes robbery.

The defendant has consistently conceded that his conduct was wrong, but argues that although he should have been charged with a violation of the Criminal Code, armed robbery was inappropriate because he was merely retaking his own property.

The Illinois cases which have discussed the property interest of the victim of a robbery have required the State to prove only that the victim had an interest which was superior to that of the defendant. (*People v. Kelly* (1975), 25 Ill. App. 3d 753, 324 N.E.2d 82; *People v. Aughinbaugh* (1970), 131 Ill. App. 2d 581, 266 N.E.2d 530.) Those cases, however, do not involve the retrieval of one's own property, but rather the failure on the part of the State to establish the actual ownership of the property, *i.e.*, robbing a store clerk.

Since this is a case of first impression in Illinois, defendant directs us to the positions of other States which have been asked to rule on the question. Some 11 States have held that the retaking of gambling losses by force cannot be categorized as robbery (1) because the felonious intent is lacking, or (2) because the gambler does not take title to the property. Although the cases cited turn on one of these two points, there is really no distinction since the two are inextricably linked.

The State urges the minority view as being the better approach, and points to Maryland which has held that the retaking of gambling debts by force constitutes robbery. In *Cates v. State* (1974), 21 Md. App. 363, 320 A.2d 75, the court said that mere possession in the victim is adequate and that title is immaterial. The reasoning and philosophy behind this interpretation is interesting and we consider it appropriate to explore it in more depth.

The defendant in *Cates* engaged in a "crap game" with an Air Force sergeant and lost. As the winner said, "I gamble well. ° ° ° It is not a matter of how good you shoot dice. It is how you place your bets ° ° °." Two days later, the defendant resorted to self-help with a pistol. The Maryland court quoted extensively from 2 Wharton's Criminal Law and Procedure §§551, 563 (Anderson ed. 1957), and then opined:

"We agree with Wharton's premise in §551 that one cannot be guilty of robbery in forcibly taking his own property, but the conclusion stated does not follow that premise. Since one is entitled to use necessary force to take his own property, why should his act be punishable as an unlawful assault? No authority is given for the statement that because gambling is illegal, title to money won at gambling does not pass to the winner. Title to contraband, and to the money paid for the purchase of it, passes hundreds of times every day. The concluding statement in §551

that it is immaterial that the defendant does not retake the identical money which was won from him is completely at odds with the statement that the loser, never having parted with title, still holds title.

We prefer Wharton's contrary statement, in §563, that the capacity of the victim is immaterial, and that it is essential only that he have possession, without regard to whether he has title, and even though that possession resulted from stealing the property.

The phrase *claim of right* and the phrase *honestly believes himself to be entitled,* when applied to an intentional taking of property, must be given a limited and not a broad interpretation. They must be taken to require a legally recognizable right which can be successfully asserted in our courts. The *intent to steal,* the element of larceny which makes it and robbery specific intent crimes, must be evaluated objectively and not subjectively, and within the framework of rights and obligations given and imposed by the law." 21 Md. 363, 369, 320 A.2d 79.

"A number of our sister States have adopted the view that one may resort to 'self-help' in order to recoup gambling losses, and some States go so far as to hold that a creditor may by force of arms recover from his debtor that owed to the creditor without transgressing the criminal law. We do not share those points of view. Imagine a situation, for example, where a finance company or bank is allowed to obtain payment from their debtor, not by judicial process, but by simply meeting the debtor on his payday when he exits his place of employment, and by the use of a weapon collecting the amount due from the debtor. We have no hesitancy in stating that in all probability debtors would commence carrying guns in order to resist their creditors. If we were persuaded by the reasoning employed in some of the other States then it is conceivable that those persons who engage in illegal gambling would also carry weapons so that they could recover their losses. Needless to say such occurrences could easily lead to the revival of the 'Wild West', with an Eastern flavor—and turn our streets into 'shoot-outs at the OK Corral.' [With apologies to Wyatt Earp.]

The Court of Appeals of Maryland has never held that a creditor or a party to an illegal transaction may take property from the possession of another merely because he believes or claims that he has a right to do so. Disputed rights between individuals must be resolved by agreement or by the courts; not by stealth or force.

The rulings of courts of other states are classified not as binding, but as persuasive authority. If the reasoning which supports them fails to persuade, they are no authority at all." 21 Md. 363, 371-72, 320 A.2d 75, 80-81.

■■ We are in accord with the philosophy so well articulated by the Maryland court and have no desire to substitute in Illinois the "rule of the gun" for the "rule of reason." To our view, it simply makes common sense.

Furthermore, the Criminal Code of Illinois is quite specific in its definition of an owner. In section 15—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 15—2), we find the following:

"Part C. Offenses Directed Against Property
Article 15. Definitions.

* * *

§15—2. Owner.] As used in this Part C, 'owner' means a person, other than the offender, who has *possession of* or any other interest in the property involved, *even though such* interest or *possession is unlawful,* and without whose consent the offender has no authority to exert control over the property." (Emphasis added.)

We note that the armed robbery statute is section 18—2 of article 15 which is a sub-category within the same Part C. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) *Ergo*, it seems inescapable that such definition of "owner" applies to the offense of armed robbery here.

Turning to another inquiry, it is argued on appeal that the trial court erred in refusing to instruct the jury that assault and aggravated assault are lesser included offenses of armed robbery. But defendant cites to us no authority whatever—either domestic or foreign—which supports his thesis. There are numerous cases in which lesser aggravated *battery* convictions have been swallowed up in the greater armed robbery convictions, but defendant has cited none that tell us that *assault* or aggravated *assault* are included within armed robbery.

The key to his argument is the word "elements." For, as our supreme court has stated:

"[T]o permit conviction for a lesser offense on an indictment charging only a greater offense, all the elements of the lesser must be included within the greater." (*People v. King* (1966), 34 Ill. 2d 199, 200, 215 N.E.2d 223, 224.)

We do not conceive of all the elements of assault and aggravated assault as being within the orbit of those necessary for armed robbery. Proof of a reasonable apprehension of receiving a battery is required for conviction of aggravated assault, but no such element is included within the greater offense of armed robbery. Doubtless such element may be inherently present in many armed robberies, but it is not an element required to be specifically proved.

■ Next, Robinson says the trial court committed reversible error by refusing to allow impeachment of the victim (Perry) as to charges filed against him and regarding the promise of leniency by the State. The State

concedes that the defendant was entitled to have the jury informed of any promises of leniency that may have been made to the prosecuting witness in an attempt to impeach his credibility but asserts that under *People v. Nester* (1976), 40 Ill. App. 3d 735, 353 N.E.2d 23, the error is harmless. Since the complaining witness' testimony regarding the armed robbery was corroborated not only by his traveling companion, but by Gibbins (the bartender), Wilder, and the defendant Robinson himself, the State is correct in categorizing the error as harmless.

Robinson also contends that the court erred in disallowing his affirmative defense of justifiable use of force in defense of property. The statute reads:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with either real property (other than a dwelling) or personal property, *lawfully in his possession or in the possession of another who is a member of his immediate family or household or of a person whose property he has a legal duty to protect.*" (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 7—3.

■■ ■ This affirmative defense is clearly available only when the *defendant* is lawfully in possession of the property. Here, the *victim* was in possession and the defense is simply inapplicable.

The defendant sets forth numerous reasons why his prior arson conviction and misdemanor conviction for theft under $150 should not have been admitted for impeachment purposes. The best argument he asserts, however, is that the prior convictions had no probative value since the defendant in his testimony admitted that he took property from the person of another by the use of force while armed with a dangerous weapon.

■■ We view the defendant's testimony, however, as sufficiently contradictory to permit the use of prior convictions. The contradictory testimony consists of questions concerning who the defendant was gambling with, how much he was losing at the time the last game started, and whether or not the defendant threatened to harm Perry (the victim) if he did not give the money to him. Since the trial judge had previously correctly ruled against the defendant on his theory of the case, his affirmative defense, and his jury instructions on lesser included offenses, the defendant's testimony was tantamount to an admission of the crime as charged. Therefore, although the impeachment evidence served no probative value, it cannot be considered reversible error.

Finally, Robinson says the trial court abused its discretion in sentencing him to 10 to 30 years. His argument in support of abuse of

discretion in sentencing centers around the facts that the complaining witness Perry was engaged in gambling, that defendant considered the money taken to be his own, that defendant did not take all of the victim's money but rather only that which he felt he was entitled to, and that the defendant thought he was being "hustled."

In imposing sentence, the trial judge put considerable effort into reviewing the defendant's past criminal conduct. He noted the mitigating circumstances that the defendant may have been provoked by a pool "hustler," but noted that the law frowns on self-help, and commented on the dangers of a loaded weapon in a public place. He also had before him defendant's prior convictions for arson and misdemeanor theft. Furthermore, the defendant was initially to be sentenced on January 6, 1978, but he failed to appear for sentencing. His bond was then forfeited and the date of sentencing was subsequently reset.

■■ There is no doctrine in criminal law that is more catholic than that the trial court has wide discretion in deciding the sentence to be imposed in a particular case. The defendant has not set forth a clear showing of abuse of discretion and without such a showing, a reviewing court cannot disturb the sentence. *People v. Hines* (1976), 44 Ill. App. 3d 204, 357 N.E.2d 884.

Affirmed.

REARDON, P. J., and GREEN, J., concur.