THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN PETTIT, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CARR, JR., *et al.*, Defendants-Appellants.

Second District   Nos. 81—671, 81—781, 81—782 cons.

Opinion filed June 17, 1983.

G. Joseph Weller, David S. Morris, Josette Skelnik, Paul J. Glaser, and Kathleen Hamill, all of State Appellate Defender's Office, of Elgin, for appellants.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission,

of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Steven Pettit, Robert Carr, Jr., and Gerald Rein were charged by information in the circuit court of Winnebago County with home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)), and Pettit was also charged with aggravated battery. Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1).

Pettit's motion for severance was granted. Carr and Rein were convicted in a bench trial, and Pettit's trial proceeded immediately thereafter before the same judge. Pettit was convicted of both charges. Each defendant's post-trial motion was denied; Carr and Rein were each sentenced to eight years' imprisonment. Pettit received concurrent terms of four years for aggravated battery and 10 years for home invasion. Each defendant appealed, and these cases were consolidated for our consideration.

On Tuesday, March 17, 1981, Robert Carr, Jr., Steven Pettit, and Gerald Rein went to the home of Duane Moore. Moore had recently sold them drugs which they believed to be bad. Using the pretense of wanting more drugs, and claiming not to be upset about the bad drugs already delivered, they convinced Moore to have his source, Ned Bassett, come over to the house with a delivery of additional drugs. When Bassett arrived, Pettit, Carr and Rein each pulled out a gun and held the two men hostage. They then forced Bassett to lead them to the home of his source, Steve Anderson. That residence was the lower apartment in a two-story house on North Court Street in Rockford, Illinois. Carr, Pettit and Rein brought Bassett and Moore with them to that apartment. Anderson was not home, but a babysitter, Mary Lynn, was there with the four-year-old son of Anderson's girlfriend.

The three defendants broke into the apartment and held Lynn hostage together with Bassett and Moore, and George Meek, who came down from the upstairs apartment where he lived with Mary Lynn when he heard her scream. After 1½ to two hours waiting for Anderson to return, Meek, Mary Lynn, the child, Bassett and Moore were forced to go upstairs to Meek's apartment where the defendants continued to hold that group of people hostage for another two hours waiting for Anderson to return. During that two-hour wait, Pettit repeatedly beat Ned Bassett, and when Bassett finally began to fight back, two shots were fired. The first shot discharged into the ceiling; the second shot hit Bassett in the right thigh and traveled into his right calf. Shortly thereafter the three defendants left the apartment,

taking Bassett and Moore with them.

Three issues are presented: (1) Whether Pettit, Carr and Rein were proved guilty of home invasion; (2) Whether Pettit was proved guilty of aggravated battery, and (3) Whether Pettit was denied due process based on comments made by the judge at the conclusion of Carr and Rein's trial concerning Pettit's role in the incident.

I

*Home invasion*

The same argument is made on behalf of all three defendants. They point out that the home invasion statute proscribes entry of the dwelling place of another "when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present ***." (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a).) The premises involved was a house which was used as two apartments. The owner of the house, Steve Anderson, lived on the main floor level with his girlfriend and her four-year-old son; George Meek and Mary Lynn lived upstairs. Anderson was their landlord. Before leaving Moore's house, Bassett was made to "write down the plans of the house [Anderson's] and how to get in it." Bassett testified Pettit made him write down the plans of the house because Pettit "wanted to know all of the exits, bushes and all, surroundings, the garage and the upstairs and the downstairs." Bassett testified he thought Anderson lived alone at the house; Bassett was not aware that different people lived upstairs. Bassett also testified that the doorway he and Pettit entered led only into the lower apartment; there was no other passageway or doorway once entry had been made through the outside aluminum door and the inside door which Mary Lynn had opened in response to Bassett's knock.

There was testimony tending to show that there was a common hallway used by occupants of the upper and lower apartments for access to the outside. However, the door to that hallway was not the door through which the three defendants entered; they entered through the door which faces south, and which is the "front" door of the lower apartment.

The defendants argue that since all the people present in the house were in the lower level apartment at the time Pettit decided they should all move upstairs, the defendants knew or had reason to know that no one was present in the upper apartment. The defendants point out that a reviewing court should give effect to the actual

intention of the legislature (*People v. Beam* (1979), 74 Ill. 2d 240; *People v. Scott* (1974), 57 Ill. 2d 353), and may discover legislative intent by considering the evil to be remedied. *People v. Dednam* (1973), 55 Ill. 2d 565.

The defendants' suggestion that the "evil to be remedied" or prevented by the home invasion statute, the unlawful entry of an occupied dwelling, is consonant with the clear language of the statute and is in accord with express judicial interpretation of the statute. (*People v. Robinson* (1980), 89 Ill. App. 3d 211, 214-15.) In rejecting a due process attack on the statute, the *Robinson* court determined that the offense of home invasion consists of two parts: unauthorized entry *and* the use or threat of force by the invader while armed with a deadly weapon or intentional injury by the invader upon an occupant. (89 Ill. App. 3d 211, 214.) It found the statute was not unconstitutionally vague because "[i]t informs all who might be tempted that they cannot, with impunity, enter another's dwelling, with reason to believe that the other is home, and therein threaten force with a deadly weapon or actually injure the occupant." *People v. Robinson* (1980), 89 Ill. App. 3d 211, 214-15.

The State urges rejection of the defendants' argument that no home invasion occurred because the defendants were aware everyone was downstairs and no one was upstairs. The State argues the record shows that Mary Lynn, the child, and Pettit preceded everyone upstairs, and that Carr and Rein must have been aware of their presence since they followed them up. The State similarly argues that Pettit entered the upstairs three separate times: first, to check to see if anybody else was up there; second, when he decided everyone should move upstairs in order to surprise Anderson when he returned, and third, after he had gone back downstairs to carry Duane Moore, who was in a wheelchair, upstairs. At the time of Pettit's last entry, the State notes that he had to be aware that Mary Lynn and the child at least were present in the upstairs apartment, because he had told them to lie down on the bedroom floor.

The State posits the home invasion statute does not require that persons be "within" or "at home" or that the dwelling be "occupied," only that persons be "present" when entry is made. It concludes, therefore, that the victims need not be within the dwelling, they must simply be at the site of the crime. In support, the State cites *People v. Pavic* (1982), 104 Ill. App. 3d 436. The defendant there gained access to the circuit breaker of the victim's apartment, and switched it to the "Off" position. When the victim left her apartment to restore her electrical service, the defendant entered the apartment. The *Pavic*

court upheld the defendant's conviction for home invasion, finding that the victim was "constructively" present in the apartment. The court considered that the evidence supported the inference that the defendant knew the victim was home, and deliberately lured her out of the apartment by subterfuge so that he could gain entrance. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 447.) The court expressed its belief its holding was consonant with the legislative intent in that the victim was within the class of people the statute was designed to protect, and that the defendant's conduct was of the type of harm the statute was enacted to prevent. 104 Ill. App. 3d 436, 447-48.

The defendants find *Pavic* distinguishable and not dispositive, and we agree. The statute is not ambiguous, and resort to definition of the word "present" is unnecessary. As the *Pavic* court stated: "The emphasis of the home invasion statute *** is solely to protect the personal safety of people in their homes." 104 Ill. App. 3d 436, 447.

The evidence here shows positively that no one was present in the upstairs apartment at the time the defendant Pettit decided everyone should go upstairs. Pettit and Mary Lynn had already surveyed the upstairs for the express purpose of seeing "if there was anybody else up there." Nor was anyone "constructively" present as in the *Pavic* case. George Meek was not "lured" out of the upstairs apartment so that the defendants could invade his home. The stated purpose of having everyone go upstairs was to make it look to Anderson like no one was downstairs, and he would then have to go upstairs where the defendants were waiting in ambush for him.

Certainly a home invasion occurred here; but it was an invasion of Anderson's home, not Meek's, and the defendants were not charged with the invasion of Anderson's home. The evidence, in fact, fails to show that the defendants "knowingly entered the dwelling place of another [Meek's]." Ned Bassett testified he drew the defendants a plan of the house, including the upstairs. He also testified that, although he had been buying drugs from Anderson for two to three years, he thought Anderson lived alone, was not aware that different people lived upstairs, and that he did not know Meek or Mary Lynn prior to the night of the occurrence. George Meek testified he told defendant Pettit that "we [he and Mary Lynn] were babysitting for Anderson."

The relief requested by the defendants here was reversal; however, this court took note of arguments made by defense counsel at the two trials to the effect that the evidence at most showed defendants were guilty, perhaps, of kidnaping, unlawful entry, aggravated assault or aggravated battery. This court agreed that the evidence in-

deed would have sustained conviction of all three defendants for aggravated battery, Carr and Rein on accountability principles. Consequently, pursuant to the broad powers granted by Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)), this court reduced the degree of offense to aggravated battery which it considered was a lesser included offense of home invasion.

■■ ■ In a petition for rehearing subsequently denied by this court, the defendants argued aggravated battery is not a lesser included offense of the subsection of the home invasion statute with which they were charged; *i.e.*, section 12—11(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)). Defendants note that "[f]or an offense to be a lesser included offense, it must not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser." (*People v. Rudd* (1980), 90 Ill. App. 3d 22, 26.) Defendants point out battery requires either bodily harm or physical contact of an insulting or provoking nature, and aggravated battery requires *inter alia*, the *use* of a deadly weapon during the commission of a battery. Defendants argue that since the precise offense with which they were charged can be committed whether or not injury occurs and that the offender need only be *armed with* a deadly weapon, it is possible to commit the greater offense of home invasion without also committing aggravated battery. Consequently, the defendants argue aggravated battery may not be considered a lesser included offense of home invasion. The defendants suggested in their rehearing petition that aggravated assault (Ill. Rev. Stat. 1981, ch. 38, par. 12—2) is the lesser included offense to which their convictions should be reduced.

Upon this court's invitation to the State to respond to the defendants' petition for rehearing, the State declined to submit an argument in support of reducing the degree of the offense. Instead, citing *People v. Mays* (1982), 91 Ill. 2d 251, it asserted that the law on the concept of lesser included offenses is not yet settled.

In *Mays*, the defendant appealed his conviction for rape contending, *inter alia*, that battery was a lesser included offense of rape and, therefore, that the court erred in refusing his tendered jury instruction as to that offense. The appellate court agreed that battery was a lesser included offense of rape, and remanded the cause for a new trial. (*People v. Mays* (1981), 93 Ill. App. 3d 352.) The supreme court reversed and reinstated the circuit court's judgment.

In so reversing, the supreme court noted that although an "included offense" is defined in the Criminal Code of 1961 (Ill. Rev. Stat.

1981, ch. 38, par. 2—9):

> "The definition *** does not indicate which of the following is determinative in deciding if a particular offense is an included offense of another: the abstract statutory definition of the greater crime; the greater crime as it is alleged in the indictment or other charging document; or the greater crime as its necessary elements are proved at trial." (91 Ill. 2d 251, 255.)

Continuing, the court noted:

> "In *People v. Cramer* [(1981), 85 Ill. 2d 92] this court recently approved the use of the second test, while at the same time pointing out that the first test was seldom used and expressing no opinion on the propriety of the third test. Under the facts of this case, however, we reach the same result no matter which test is applied." *People v. Mays* (1982), 91 Ill. 2d 251, 255.

The State here posits this court's reduction of the degree of the offense to aggravated battery could be sustained if the third test in *Mays* were accepted as determinative in deciding if a particular offense is an included offense of another. That is, if the evidence presented at trial to prove the elements of the greater offense also proved the elements of a lesser offense.

In reply, the defendants point out that the use of the third test in *Mays* would not sustain a reduction of the home invasion offense to aggravated battery because that test is actually the "inherent relationship" test applied in several Federal cases.

> "By 'inherent relationship,' the Federal courts of appeals meant that the two offenses 'must relate to the protection of the same interest, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.' (*United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, 319.)" (91 Ill. 2d 251, 258.)

Defendants contend there is no such "inherent relationship" between the offenses of home invasion and aggravated battery.

The issues in *Cramer* and *Mays* were framed in the context of an instructional error being made, whereas this court's consideration of the issue is framed in the context of its discretion to reduce the degree of an offense pursuant to Supreme Court Rule 615(b)(3). Power to exercise that discretion, however, is only available when lesser included offenses are involved. (*People v. Trinkle* (1976), 40 Ill. App. 3d 730, 734, *aff'd* (1977), 68 Ill. 2d 198.) Notwithstanding the seeming lack of certainty as to which of the three tests in *Mays* is determina-

tive, *Cramer* did utilize the second test; *i.e.*, that the greater crime as it is alleged in the indictment or other charging document is determinative in deciding if a particular offense is an included offense therein. That test also has been used at the appellate level. See, *e.g.*, *People v. Barkenlau* (1982), 105 Ill. App. 3d 785; *People v. Robinson* (1979), 68 Ill. App. 3d 687; *People v. Thompson* (1977), 55 Ill. App. 3d 795.

■■ *Cramer* expressed no opinion "whether the evidence as adduced at trial could support a defendant's tendered instruction where the terms of the indictment could not." (*People v. Cramer* (1981), 85 Ill. 2d 92, 98.) This court in *Barkenlau*, however, in addition to eschewing the use of the first test (comparison of the abstract elements of the crime-charged statute and the instruction-tendered statute), considered that the issue sidestepped in *Cramer* was not open for its consideration. *Barkenlau* noted that when conduct is violative of more than one statute and each statute requires different proof for conviction, it is well established that it is for the State, not the defendant, to choose under which statute prosecution will proceed. (*People v. Barkenlau* (1982), 105 Ill. App. 3d 785, 789-90.) "[O]ne may not be convicted of an unindicted offense which is not a lesser-included of the offense for which he is charged. [Citations.]" 105 Ill. App. 3d 785, 790.

■■■ The information at bar charged Pettit, Car and Rein committed the offense of:

"Home Invasion, in that they, without authority and not being peace officers, knowingly entered the dwelling place of George Meek located at 1413 North Court Street, Rockford, Illinois, having reason to know that one or more persons were present therein, and while armed with a dangerous weapon, to-wit: a certain handgun, did within such dwelling place, use force or threaten the imminent use of force upon the said George Meek. ***."

The offense of aggravated battery is not a lesser included offense of home invasion as charged in the information because the elements of bodily harm and use of a deadly weapon are not alleged therein. Aggravated assault is also not a lesser included offense because there is no allegation that Meek was placed in "reasonable apprehension of receiving a battery," an element essential to proof of that offense. (*People v. Barkenlau* (1982), 105 Ill. App. 3d 785, 789; *People v. Robinson* (1979), 68 Ill. App. 3d 687, 691.) Accordingly, defendants' convictions for home invasion are hereby reversed and their sentences for that offense vacated.

## II

### *Aggravated battery conviction*

Defendant Pettit also appeals his conviction for the aggravated battery of Ned Bassett, contending the State's evidence failed to prove a knowing or intentional act on his part which caused bodily harm. He notes that the State's burden was to prove he was "consciously aware" that his conduct was "practically certain" to cause the result. (Ill. Rev. Stat. 1981, ch. 38, par. 4—5(b).) He finds *People v. Barrington* (1973), 15 Ill. App. 3d 445, applicable. The court in *Barrington* reversed the defendant's battery conviction because it found the evidence did not show beyond all reasonable doubt that he knew his conduct would result in harm. The defendant there was a high school teacher, and several female students present for cheerleading practice had blocked off the corridor in front of his office door with a coatrack. The defendant heard laughter emanating from the hallway, exited his office, and attempted to push the coatrack aside, unaware that one of the casters was jammed. The rack fell on the students, injuring them.

The defendant finds the testimony given by the State's four witnesses to be proof that "the shooting was quite clearly accidental." Mary Lynn could only testify that from her position in the bedroom with the child, she heard fighting and two shots. Meek heard the defendant threaten to shoot Bassett at one point, and he heard two shots. After one of the shots, he looked up to see the defendant about two feet away from Bassett, pointing the gun right at Bassett, but he could not testify that that shot hit Bassett. Moore testified that the defendant and Bassett struggled over the gun and it went off, striking the ceiling. When the second shot went off, Bassett, crouched in the doorway between the living room and the entry way, had just begun to stand up and the gun went off. Moore testified he did not recollect, though, that the defendant was pointing the gun at Bassett.

Pettit notes particularly the testimony of the victim himself. Bassett testified that he and the defendant were wrestling around, and that the gun was in the defendant's poncho sweatshirt pocket. Bassett testified the first shot went through his thigh and also through the ceiling.

The State argues the factual testimony given supports the finding that the shooting was "knowing." It discounts Bassett's testimony as being "less than lucid," due to the beating the defendant had inflicted upon him. The court found Bassett's testimony unreliable as well, because he was a drug dealer and may have been scared or afraid.

The State points out Moore testified the defendant had cocked the gun and it went off when Bassett rushed at the defendant during the fight. The second shot did not occur during the fight, but when Bassett was crouched in the doorway starting to get up. The State posits that Meek's testimony undeniably suggests intentional injury. Meek testified the defendant stated Bassett "ought to be shot," the gun went off, and Meek observed the defendant about two feet away from Bassett, pointing the gun right at him.

The State urges that if this court should find the evidence insufficient to sustain the aggravated battery conviction, that the conviction be reduced to reckless conduct as permitted by Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)) and as argued by defense counsel below.

The defendant finds the State's discounting of Bassett's testimony to be very irregular, and urges this court to reject the State's claim because "nothing in the record supports the State's contention that Bassett was unable to remember clearly the events of the evening in question."

We believe the evidence supports the defendant's conviction for aggravated battery. Certainly the defendant's conduct here cannot be equated with that of the defendant in *Barrington*. (15 Ill. App. 3d 445.) The requisite mental state for a crime may be proved by acts and circumstances surrounding the defendant's conduct. (*People v. Colley* (1980), 83 Ill. App. 3d 834, 838; *People v. Trump* (1978), 62 Ill. App. 3d 747, 749.) The testimony of one witness, if positive and credible, is sufficient to sustain a conviction. (*People v. Johnson* (1973), 15 Ill. App. 3d 741, 743.) In a bench trial, the credibility of witnesses is for the trial judge to determine, and the decision of the trier of fact in this regard will not be disturbed unless it is based upon evidence which is so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

Here, Meek's testimony was positive and credible. Further, his testimony that the defendant was pointing the gun right at Bassett was based on his observation after the second shot was fired which was the shot which struck Bassett's thigh. Moore testified the first shot went into the ceiling, and both Moore and Meek testified the second shot was fired when Bassett was crouched in the doorway and beginning to stand up. Photos of Bassett taken the next morning at the hospital show a wound consistent with the posture described by those two witnesses, in that the bullet passed through Bassett's thigh and entered his calf.

Further, contrary to the defendant's assertion, Bassett's own testimony is replete with statements indicating he was less than lucid, to-wit:

"Q. [Prosecutor] How long did the group remain at Anderson's apartment [downstairs]?

A. [Bassett] Roughly an hour and a half.

Q. What happened after that?

A. I woke up in a scalding hot water bathtub with a bullet wound in my leg.

\* \* \*

A. [Bassett] And he [defendant] started beating on me and that's all I remember.

\* \* \*

A. [Bassett] \*\*\* I think while we were wrestling around, the first shot went through my thigh and also through the ceiling and so we started rolling around again. I was crawling after that and that's the next thing I remember was I was in the tub.

\* \* \*

Q. [Defense counsel] That's the length of any struggle or wrestling upstairs?

A. [Bassett] Yes. I was pretty well out of my head at that time, after being beat so much.

Q. So you don't recall too much of what happened upstairs?

A. That's right.

\* \* \*

Q. [Defense counsel] How many shots do you actually recall being fired upstairs?

A. [Bassett] One. \*\*\*"

The photos taken of Bassett reveal a person who had indeed undergone quite a beating, and we believe the court correctly determined Bassett's testimony was not reliable.

■ In sum, we conclude the evidence sustains Pettit's conviction for aggravated battery, and no reversal or reduction in the degree of the offense is warranted.

## III

### *Impartial trier of fact*

Defendant Pettit lastly charges that the trial judge was predisposed to find him guilty and he was therefore denied a fair trial before an impartial trier of fact. He finds the basis for his charge in cer-

tain comments made by the trial judge at the conclusion of Rein and Carr's trial which immediately preceded his, to-wit:

"[The two codefendants] go upstairs with the guns because they are in it with Pettit and under the Accountability Statute [*sic*], at least, they are guilty. Buy they went upstairs when they could have disengaged. They could have left. They could have gone. They are so overwhelmed by Pettit, they couldn't do anything? That's sheer, utter nonsense. They went there because they had been ripped off with bad drugs and they were as much a part of it as Pettit was and they had the pistols."

The defendant alleges the comments show the judge was so convinced the defendant was guilty beyond a reasonable doubt, that he believed Rein and Carr were guilty under accountability principles. Thus, he contends he was denied his well-established right to a trier of fact free from prejudice or preconceived notions of guilt. (*People ex rel. Przyblinski v. Scott* (1959), 23 Ill. App. 2d 167.) Defendant asserts the error may not be considered to be waived by counsel's failure to file a motion for substitution of judges (Ill. Rev. Stat. 1981, ch. 38, par. 114—5(c)), since the record does not indicate defense counsel was aware of the trial judge's prejudicial comments. Defendant's further position is not only that he has not waived the issue, but that the judge should have recused himself *sua sponte* from the defendant's case.

The State counters that the defendant has waived the issue, and that the comments do not demonstrate prejudice. It points out the court has no duty to recuse itself *sua sponte* when the defendant has failed to move for a substitution of judges prior to trial. (*People v. Rynberk* (1980), 92 Ill. App. 3d 112.) Further, the trial court does not have the burden of justifying its retention of the case; rather, the defendant bears the burden of showing that prejudice will result if his motion to substitute is not granted. *People v. Mitchell* (1979), 76 Ill. App. 3d 878; *People v. Ganci* (1978), 57 Ill. App. 3d 234; see also *People v. Bianchi* (1981), 96 Ill. App. 3d 113.

The State finds the defendant's "no waiver" argument untenable. It reasons that defense counsel most likely would have well acquainted himself with the outcome of the preceding trial and/or even been present during same. Additionally, it denies the court's comments reflect any prejudice whatsoever since the comments were made only as a function of considering the guilt of the codefendants, and the record of the defendant's case fails to reveal that the court relied on its resolution of the preceding case, or that it gave less than attentive and impartial consideration to the evidence presented in the

defendant's trial.

The defendant replies the cases cited by the State in opposition to his waiver argument are not apposite because the defendants in those cases (*Rynberk, Mitchell* and *Ganci*) were aware prior to their trials of the facts upon which their motions for substitution were based. Contrary to the State's argument, the defendant finds it highly unlikely that defense counsel would have been free to spend half his day to attend a trial which was not part of his caseload. Further, the defendant asserts the court's comments were inherently prejudicial because it necessarily would had to have decided the defendant was guilty beyond a reasonable doubt in order to have found the codefendants accountable.

Despite the defendant's petition for rehearing urging reconsideration of our decision of this issue, we agree with the common sense logic underlying the State's argument that the defendant has waived this issue. If we were to reach the merits of the issue under the plain error rule (87 Ill. 2d R. 615(a)), the result would be the same.

We believe the defendant's contention that he was denied a fair trial by an impartial trier of fact is without merit. Clearly, defense counsel knew his client's trial would possibly immediately follow Rein and Carr's. The court had advised him in advance that it would proceed directly to defendant's trial at the conclusion of Carr and Rein's, even if only part of the day remained. Thus, counsel impliedly was placed on notice that he should be "at the ready."

The record reflects the court was cognizant of its duty to recuse itself if necessary: at the hearing on the defendant's motion for severance, the judge, noting he had received a letter from Pettit, advised Pettit he had turned the letter over to defense counsel, explaining that if he had read the letter and there were any things prejudicial to either side in it, he would have to disqualify himself.

Defense counsel's motion for severance alleged the defendant would be adversely prejudiced if tried jointly with Rein and Carr due to their signed statements which had been ruled admissible. The statements plainly suggest their guilt under accountability principles. Unlike the defendant's construction of the court's comments, we believe they may more correctly be construed as an expression of the court's belief that Carr and Rein were guilty as "principals" rather than as "accountables."

■ Construction aside, we note that section 5—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—3) permits the conviction of a person legally accountable for the conduct of another even if that other person has not yet been prosecuted or convicted, or actu-

ally has been acquitted. (See generally *People v. Luigs* (1981), 96 Ill. App. 3d 700, 703; *People v. Ruiz* (1979), 78 Ill. App. 3d 326, 329.) With that in mind, we are led to the conclusion that the court's reference to Rein and Carr's guilt under the accountability theory did not *ipso facto* amount to an expression of its belief in the defendant's guilt as principal as well.

The defendant bears the burden of choosing defense tactics and preserving alleged errors for review. (*People v. Driver* (1978), 62 Ill. App. 3d 847.) Defense counsel surely was aware that virtually the same evidence would be presented in the former prosecution as in the latter. His defense strategy at trial was apparently not that the defendant was not guilty but, rather, that he was not guilty *of the offenses charged*. Defense counsel made arguments in the trial court suggesting the defendant's conduct amounted perhaps to lesser offenses. The fact defense counsel made no motion for substitution of judges may have been a deliberate tactic rather than a lack of knowledge of the allegedly prejudicial comments made by the court.

In sum, it is our view that the court's comments did not amount to "a personal expression" of its belief that Pettit was guilty, and that Pettit received a fair trial.

In accord with the foregoing, the convictions of the defendants Pettit, Carr and Rein for home invasion are reversed and their sentences for that offense vacated.

The judgment against defendant Pettit for aggravated battery (which was committed on Edward Bassett) is affirmed, but that cause is remanded for resentencing because the trial court may well have been influenced by the defendant's conviction for home invasion in sentencing him for the aggravated battery conviction. *People v. Green* (1980), 83 Ill. App. 3d 982, 987; *People v. McTush* (1979), 78 Ill. App. 3d 603, *rev'd on other grounds* (1980), 81 Ill. 2d 513.

Affirmed in part; vacated in part and remanded with directions.

SEIDENFELD, P.J., and LINDBERG, J., concur.