THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARLENE FRIEDMAN, Defendant-Appellant.

First District (3rd Division)   No. 84—0825

Opinion filed June 4, 1986.

Jeffrey Neal Cole, Ltd., of Chicago (Jeffrey Cole and Andrew T. Staes, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, defendant, Marlene Friedman, was convicted of three counts of forgery and one count of felony theft. She was sentenced to 30 months' probation, the first 90 days to be served in the Cook County department of corrections. On appeal, defendant contends: (1) the trial judge erred in failing *sua sponte* to disqualify himself; (2) two of the jury instructions for counts I through IV were plainly erroneous; (3) the trial court's comment to the jury regarding

sequestration was coercive and unconstitutionally hastened the verdict; (4) the trial court erred in allowing mug shots of the defendant to be published to the jury without limiting instructions and (5) the trial court erred in admitting testimony regarding the contents of a written document in violation of the "best evidence rule."

On August 21, 1982, at approximately noon, Robin Nemetz was on her way to the airport to leave for a European vacation. She opened her purse, discovered her checkbook and credit cards were missing and asked her sister, who was in the car with her, to notify the bank and stores which had issued the credit cards.

After she returned from Europe, Nemetz received her bank statement. In it was a check she had not written, dated August 21, to a shoe store. She called the police and reported the incident. A few days later, she received her monthly statement from Saks Fifth Avenue (Saks). Included with the monthly statement were three sales checks signed with her name for purchases made August 21, 1982. The three sales receipts were for merchandise in the amounts of $927.55, $176.55 and $254.66.

Nemetz called Saks and arranged to see Jeffrey Biro, the head of store security. She told Biro she was out of town on August 21, 1982, and that she had neither made the purchases nor signed the sales checks. On August 21, Biro had been alerted by Andrea Cross, a sales person, that a purchase was being made with a credit card reported stolen. He and another store security agent, Maureen Schmidt, watched the purchase being made and followed the buyer through the store as she made two other purchases.

The woman left the store and the security personnel followed her and asked her to return to the store. She was informed that the credit card she was using had been reported stolen. Biro then asked the woman questions about Robin Nemetz using information taken from her account records. The woman correctly provided Nemetz' birth date, social security number, business address and home phone number. Biro dialed Nemetz' home phone number and got a recorded message which sounded like the woman using the credit card. Biro then let the woman leave the store with the merchandise and kept the credit card.

When Biro described to Robin Nemetz the woman who had made the purchases and correctly answered the questions, she identified the defendant, whom she had known for a year. On August 20, 1982, the defendant and Nemetz were together at a disco, and Nemetz had asked the defendant to watch her purse while she danced. Nemetz subsequently called the police and told them about the Saks transac-

tions, and that she suspected the defendant.

On October 25, 1982, after his meeting with Nemetz, Biro was shown 12 mug shots by the police. He identified defendant as the woman who had made the purchases and signed the charge slips on August 21. A warrant was issued and defendant was arrested on October 27, 1982. That day, Biro identified her from a lineup at the police station.

Maureen Schmidt, a former store security agent at Saks, gave testimony substantially similar to Biro's about the transactions they watched on August 21, 1982. On October 27, she received a telephone call from the police asking her to view a lineup. She identified the defendant and told Biro and the detectives that defendant was the woman involved in the transactions on August 21.

Detective John Lorrie of the Chicago police department testified that around October 1, 1982, he was contacted by Nemetz regarding her stolen checkbook and credit cards, and was informed that someone had used her Saks credit card to make purchases while she was out of the country. He contacted Biro, got a description of the woman who had made the purchases and arranged to meet him. On October 25, he took a picture of the defendant and several other women to Biro to see if he could identify the person who had used Nemetz' credit card. Biro identified the defendant and, on the morning of October 27, Detective Lorrie and his partner arrested her at her home. Biro and Schmidt identified her out of a lineup, and she was charged with the offenses.

Maureen Casey-Owens, chief documents examiner for the Chicago police department, testified that after examining several of Nemetz' and the defendant's handwriting exemplars, she was unable to either identify or eliminate defendant as the person who signed the charge slips. She was also unable to determine whether the signatures had been written by Nemetz, or that all three charge slips were signed by the same person.

■ Defendant's first contention on appeal is that the trial judge erred in failing to disqualify himself from her trial. On May 9, 1983, while she was under indictment for the charges in the instant case, defendant contacted the special prosecution unit of the office of State's Attorney of Cook County. She indicated she was aware of a criminal investigation of some members of the Cook County bar and judiciary, that she was disgusted with the criminal justice system and wanted to cooperate in the investigation. She stated that she was the former girl friend of associate judge Alan Lane, who allegedly asserted that he could influence or help her with her pending criminal

case before the trial judge. The State's Attorney contacted the office of the United States Attorney for the Northern District of Illinois (United States Attorney's office) and arranged for the defendant to meet with him, a member of the United States Attorney's office and several FBI agents to discuss the information she had to offer. There were several meetings with the Federal prosecutors over the next few days. Defendant maintained a relationship with the prosecutors for several months but the investigators were unable to verify defendant's allegations about Lane's assertions of influence, and no results were achieved by her participation in the investigation.

At some point in this series of events, defendant expressed a desire for counsel. The prosecutors cautioned her that the matter was extremely sensitive and that complete confidentiality was essential. It is unclear from the record whether she did not want to involve her attorney of record in the criminal case, or whether the government prosecutors asked her to retain other counsel. The prosecutors suggested several attorneys as appropriate candidates, and defendant retained Thomas Sullivan, a former member of the United States Attorney's office. Her relationship with Sullivan lasted from late May to July 1983. In July 1983 defendant retained new counsel in the criminal case. In September 1983, defendant filed a motion to dismiss the indictment in the instant case alleging that the prosecutor's actions had deprived her of her right to the effective assistance of counsel.

On September 12, 1983, the trial court held a hearing on the motion to dismiss the indictment. The hearing received extensive news coverage. On September 30, prior to making its ruling, the court expressed outrage at what it considered to be distorted and malevolent reports of the hearing which had appeared in the newspapers and on television. The court then stated that the abortive cooperation between the prosecutors and the defendant was "distinctively independent" of the pending criminal case, had nothing to do with the merits of the case, and that the consideration of the evidence in the case would in no way be affected by whatever transpired between the defendant and the prosecutors relating to the Greylord investigation. The court therefore denied defendant's motion to dismiss the indictment.

Defendant argues that the court's statements regarding the news coverage of the hearing were indicative of bias against her and that the court had a duty *sua sponte* to disqualify itself from presiding at defendant's trial. The State maintains that in the absence of a motion for substitution of judges, the court was under no duty to disqualify itself. There is, in Illinois, no duty incumbent upon a trial judge to dis-

qualify himself when the defendant has failed to move for substitution of judges prior to trial. (*People v. Pettit* (1983), 114 Ill. App. 3d 876, 449 N.E.2d 1044.) Indeed, the failure to so move waives the issue on appeal. 114 Ill. App. 3d 876, 449 N.E.2d 1044; *People v. Mitchell* (1979), 76 Ill. App. 3d 878, 395 N.E.2d 696.

■ Defendant, however, cites *Johnson v. Mississippi* (1971), 403 U.S. 212, 29 L. Ed. 2d 423, 91 S. Ct. 1778, and *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 386 N.E.2d 398, as authority for the proposition that the court has a duty to act *sua sponte* whenever there is such a likelihood or appearance of bias as to deny the accused a fair and impartial trial, thus depriving him of due process of law. We note first that the defendants in *Johnson* and *Payne* had been cited for contempt of court by the judges subsequently presiding over their trials. The record in the instant case discloses no hostile exchange between the defendant and the court, or action of the defendant that would give rise to a similar possibility of bias or prejudice against her. The court's complained-of comments at the hearing on defendant's motion to dismiss the indictment were specifically directed at the press. It is only conjecture to suppose, as does the defendant herein, that the comments to the press disguised wrath towards the defendant. As the State points out in its brief, the only comment the court made about the defendant was that the investigation she initiated came to nothing. In addition, the court expressed the belief that the events connected with defendant's cooperation in the Greylord investigation were so removed as to be not even tangential to the criminal proceedings before it.

■ Although the defendant points to various rulings of the trial court as evidence of actual prejudice, our review of the record indicates the trial was conducted fairly and impartially. Moreover, allegedly erroneous rulings and findings by the trial court are insufficient reasons to believe the court was biased or prejudiced against a defendant. (*People v. Massarella* (1980), 80 Ill. App. 3d 552, 400 N.E.2d 436, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 799, 101 S. Ct. 855.) Where, as here, the defendant suffered no harm from the court's conduct of the trial, she was not denied due process of law. See *People v. Rynberk* (1980), 92 Ill. App. 3d 112, 415 N.E.2d 1087.

■ Defendant next contends that, as a matter of law, several of the instructions to the jury constituted plain error and are thus grounds for reversal. In particular, defendant complains that the instruction pertaining to counts I through III was defective in that it was worded in the disjunctive which permitted the jury to convict on counts I through III by a finding of guilty on any one of the three

counts. The complained-of instruction reads, in pertinent part:

"To sustain the charge of forgery, the State must prove the following propositions:

First: That the defendant knowingly issued *or* delivered Saks' sales receipt No. 420192-30 *or* Saks' sales receipt No. 70968-18 or Saks' sales receipt No. 420611-3 which she knew had been made *or* altered, so that it appeared to have been made by another; \*\*\*." (Emphasis added.)

Defendant also objects to the instructions pertaining to count IV, the charge of theft over $300, because there was no way for the jury to separate the various transactions and find that defendant did not sign all the sales checks, two of which were for amounts less than $300. Defendant argues that the instructions are fatally defective particularly in light of Maureen Casey-Owens' testimony that she was unable to conclude that the three sales receipts were signed by the same person.

The State counters by arguing that the jury received eight verdict forms for guilty or not guilty on each count, and therefore considered each count separately; thus, the instructions to the jury, taken as a whole, properly informed the jury as to the applicable law. The State also points out that defense counsel failed to object to the proffered instructions at any time and the issue is therefore waived. Although failure to object to a jury instruction generally constitutes waiver, where there are such grave errors in instructions as to affect the requirements of a fair and impartial trial, the plain error doctrine contained in Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)), provides an exception to the waiver rule. (*People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156.) We thus consider the issue under the plain error doctrine.

■■ ■ In addressing issues raised with respect to specific instructions, a reviewing court is obliged to examine the instructions as a whole to determine whether the jury was adequately and properly instructed. (*People v. Witanowski* (1982), 104 Ill. App. 3d 918, 433 N.E.2d 334.) Jury instructions should not be misleading or confusing but should fully and fairly inform the jury of the applicable law. (*People v. Gathings* (1981), 99 Ill. App. 3d 1135, 425 N.E.2d 1313.) Moreover, in a criminal case, the court bears the burden of seeing that the jury is properly instructed on the elements of the crime charged, the presumption of innocence, and the question of the burden of proof. (*People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487; *People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156.) The court's failure to give properly any of these three essential jury instructions

serves to deprive the accused of a fair and impartial trial. *People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156.

■■ We therefore disagree with the State that the errors contained in the instructions relating to the elements and burden of proof for counts I through IV were remedied by the inclusion of separate verdict forms for each count. It is unreasonable to attribute to a verdict form the responsibility of instructing the jury on the essential elements of an offense and the burden of proof for that offense. We hold, therefore, that the instructions pertaining to counts I through IV were deficient in that they were phrased in such a way as to deny the jury the option of finding the defendant had not signed all three of the sales receipts and thus may not have been guilty of all three counts of forgery and therefore not guilty of theft over $300. *Cf. People v. Gathings* (1981), 99 Ill. App. 3d 1135, 425 N.E.2d 1313.

■■ Defendant next contends that the trial court impermissibly hastened the verdict. The jury retired to deliberate in the late afternoon of the day of trial. At approximately 7 p.m., the jury requested a transcript of the trial. The court answered that there was none available, and the jury returned to the jury room for further deliberation. At 9 p.m., the jury inquired about the meaning of "unauthorized control over merchandise" in the instructions pertaining to theft. The court orally clarified the instruction by stating that it meant having something to which one is not legally entitled. The court then stated:

> "As long as you're out here I will tell you that in about half an hour we have to arrange overnight accommodations for you, which we do very often, and then you would be back here tomorrow morning. So in the meantime, that will be in about 45 minutes probably. So you may return to the jury room."

The jury returned verdicts of guilty on all four counts approximately five minutes later.

Informing a jury that they will be sequestered after a certain time cannot necessarily be considered coercive. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913, *cert. denied* (1984), 465 U.S. 1032, 79 L. Ed. 2d 698, 104 S. Ct. 1298.) Notably brief deliberations, however, invite an inference that the court's remarks were the primary factor in the procurement of the verdict. *People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868.

In *Branch,* this court found dispositive the fact that the jury deliberated for 4½ hours before hearing the remarks but for only 10 minutes thereafter before returning a verdict. Similarly, in the instant case, the jury deliberated for more than four hours before the court's remark about sequestration and for only five minutes thereafter. We

therefore agree with the defendant that it is likely that the court's comment impermissibly hastened the verdict in the case. The verdict must therefore be reversed.

■■ ■ Defendant next contends that the trial court erred in allowing a police photograph of the defendant to be published to the jury without proper limiting instructions. The admissibility into evidence and submission to the jury of a photograph is a matter within the sound discretion of the trial court and its determination will not be set aside absent a manifest abuse of that discretion to the prejudice of the defendant. (*People v. Dillard* (1979), 68 Ill. App. 3d 941, 386 N.E.2d 416, *cert. denied* (1979), 444 U.S. 935, 62 L. Ed. 2d 193, 100 S. Ct. 282.) It is well settled that evidence of other offenses is admissible for any purpose other than to show the propensity to commit a crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) Specifically, the admission into evidence or testimony about police photos is not error *per se* even if an inference of defendant's prior criminal activity can be drawn by the jury. In particular, mug shots are not prejudicial as constituting evidence of other offenses where they are relevant to the issue of identification. (*People v. Pendleton* (1982), 104 Ill. App. 3d 1104, 433 N.E.2d 1076.) Here, Biro was shown police photos of the defendant and other women for purposes of identification. When the jury saw them, the legends were masked with white tape. The probative value of the photos for identification thus far outweighs any possible prejudicial effect, and any error in admitting them without limiting instructions was harmless.

■■ Defendant's final contention is that the court erred in allowing Nemetz to testify about the check drawn on her account while she was out of the country that was included in her bank account statement when she returned from Europe. Defendant maintains that the State made no attempt to produce the check or demonstrate its unavailability as required by the "best evidence rule" and that the testimony was therefore erroneously admitted.

On direct examination, Nemetz testified that the check was dated August 21, 1982, and that written on the back was a phone number one digit different than defendant's home phone number. Defense counsel then interrupted the questioning by objecting that the State did not have the check. The prosecutor stated he would move on to another area of questioning and the trial court allowed Nemetz' answers to stand. On cross-examination, however, defense counsel reopened the questioning about the check.

The "best evidence rule" requires that when proof is sought to be

made as to the contents of a written instrument, that instrument or a true copy must be produced or its absence explained. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) Where, however, an accused procures, invites or acquiesces in the admission of evidence, even though it may be improper, he cannot complain on appeal. (*People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44, *cert. denied* (1984), 465 U.S. 1036, 83 L. Ed. 2d 372, 104 S. Ct. 1310.) Indeed, where the court sustains an objection to questioning and the defendant later reopens the subject on cross-examination, defendant is estopped from complaining about the witness' statement on appeal. We therefore decline to address this issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial consistent with this opinion.

Reversed and remanded.

McNAMARA and WHITE, JJ., concur.